## HARRIS COUNTY V. JOHN S. STEWART.

### No. 518.—Decided June 25, 1897.

| 91 | 133 |
| 91 | 354 |
| 38a | 584 |
| 38a | 657 |
| 38a | 660 |
| 38a | 662 |
| 38a | 663 |
| 38a | 664 |
| 38a | 665 |
| 38a | 666 |
| 38a | 667 |
| 38a | 669 |

**1. County Convict—Liability for Fees—Unlawful Conviction.**

A county which has received satisfaction of a fine and costs through the labor of a convict committed to jail in default of their payment (Sayles' Civ. Stats., art. 3600) does not thereby become liable to the prosecuting attorney for his fees so satisfied, if there was no lawful conviction. (P. 135.)

**2. City Attorney—Right to Act for State.**

By virtue of section 16 of the Charter of the City of Houston (Special Laws, 23 Leg., p. 19) it was the duty of the City Attorney to represent the State, when requested, in prosecutions for offenses against its penal laws before the City Recorder, the county having no County Attorney, but having a resident District Attorney. (P. 136.)

**3. Same—County Attorney.**

The Constitution (art. 5, sec. 21) imposes the duty and authority to represent the State in such prosecutions upon the County Attorney, if there be one—in which case the provision of the charter imposing this duty on the City Attorney would be unconstitutional. (State v. Moore, 57 Texas, 307.) (P. 146.)

**4. Same—Acting by Appointment.**

Where there is a County Attorney, who fails to attend, the Recorder, exercising the powers of a Justice of the Peace (Code Crim. Proc., art. 38), could appoint an attorney to represent the State, and since he has no term of court the appointment should be made in each case. A general request or appointment by him to represent the State would be void. (P. 146.)

**5. Same—Fees.**

The City Attorney representing the State in the Recorder's Court (there being no County Attorney) was entitled to the fees payable to a County Attorney for like services. The compensation fixed for his services by ordinance or resolution of the city council related only to services rendered the city. (Johnson v. Hanscom, 90 Texas, 321.) (P. 136.)

**6. City Recorder—Offenses Against State—Jurisdiction—Presumption.**

The City Recorder could acquire jurisdiction to try offenses against the State only in the manner in which a Justice of the Peace could, that is, by complaint made in accordance with Code Crim. Proc., arts. 937, 938, or by warrant issued when an offense was committed in his view. (Art. 936.) The presumption of the existence of facts necessary to give jurisdiction, obtaining in civil cases (Crawford v. McDonald, 88 Texas, 626), does not extend to criminal cases. But no formal judgment was necessary to the validity of the conviction. (Pp. 136, 137.)

**7. City Recorder—Offenses Against State—Jurisdiction—Constitution.**

The Legislature has power, under the Constitution, to confer upon a City Recorder the jurisdiction of a Justice of the Peace over offenses committed against the laws of the State. (Reviewing Const., art. 5, amendment of 1891; Code Crim. Proc., arts. 98, 929; Ex parte Ginnochio, 30 Texas Cr. App., 584; Ex parte Towles, 48 Texas, 414; Gibson v. Templeton, 62 Texas, 555; Blessing v. City of Galveston, 42 Texas, 661; Johnson v. Hanscom, 90 Texas, 321; with decisions from other states; and dissenting from ruling of Court of Criminal Appeals in Leach v. State, 36 Texas Cr. R., 248.) (Pp. 137 to 145.)

**8. Same.**

Courts have no right to declare an act void because it is against the spirit of the Constitution. There must exist some express or necessarily implied prohibition (Lytle v. Halff, 75 Texas, 128.) (P. 143.)

QUESTIONS CERTIFIED from Court of Civil Appeals for First District, in an appeal from Harris County.

· *F. L. Schwander* and *John G. Tod*, for appellant.

*Goldthwaite & Moody*, *Wm. H. Wilson* and *Lock McDaniel*, for appellee.

BROWN, ASSOCIATE JUSTICE.—The following statement and questions are certified to this court from the Court of Civil Appeals for the First Supreme Judicial District:

"Appellee is City Attorney of the city of Houston, holding his office under the charter of that city, which is a public law of which the courts are required to take judicial notice. From time to time, there were instituted prosecutions before the City Recorder against persons charged with the commission of acts which are defined as offenses by the Penal Code of this State and which were misdemeanors of which a Justice of the Peace would have jurisdiction. It does not appear that any ordinances of the city had been adopted, making such acts offenses against the city, or imposing any penalty for their commission. The Recorder requested appellee to be present, or have a representative present, in all such cases, to represent the State, and appellee, accordingly, sent an attorney, called his deputy, who represented the State in all such cases, with the consent of the Recorder, and fines were entered against the persons charged. Affidavits were not made against the persons charged, but the style of the case, the charge and the plea were entered on the docket. No judgments of conviction were entered except the simple notation of 'guilty,' or 'plead guilty,' and of the fines assessed and costs taxed. Among the costs were included fees of the City Attorney in sums equal to those allowed by the Code of Criminal Procedure for like services, when rendered by the district and county attorneys, or attorneys representing the State by appointment, in their absence. Harris County has no County Attorney, but has a resident Criminal District Attorney.

"Before, and at the time, these prosecutions were conducted, there was a resolution of the city in force, fixing compensation of its officers, the part affecting the City Attorney being as follows: 'The City Attorney shall receive an annual salary of $900, and the City Attorney shall also be allowed a commission of ten per cent on all sums of money collected by him for the city when said sums of money are collected by reason of the institution of suit in court to enforce the collection; such percentage, however, only to be paid in amounts actually collected and only as the same are collected. He shall also receive such fees as may be al-

lowed by ordinance.' An ordinance allowed him a fee of one dollar in each case tried before the recorder for violation of city ordinances, to be taxed against defendants and collected as costs. The parties against whom fines and costs were entered and taxed in the causes above referred to, were committed by the Recorder to the custody of the county jailer, and were subsequently employed upon the public works of the county, in accordance with the State laws regulating such proceedings concerning county convicts, and they worked out the sums so charged against them.

"This suit is brought by the appellee to recover of the county the amount of fees so taxed in his favor by the Recorder, in payment of which the county obtained the services of the persons thus charged.

"First.—Having, in the manner stated, received the services of the persons so convicted of offenses, in payment of the fees allowed, is the county responsible for such fees, regardless of the answers which might be given to the succeeding questions?

"Second.—Under the Constitution, laws of the State, and the charter of the city, had the Recorder jurisdiction to entertain prosecutions for acts which were violations of the Penal Code of which justices of the peace would also have jurisdiction?

"Third.—Was it the official duty or right of the City Attorney of Houston to represent the State in such prosecutions?

"Fourth.—If it was not a right or duty of the City Attorney, resulting from his office, to so represent the State, can he recover the fees allowed to prosecuting attorneys by the Code of Criminal Procedure for like services, because he was requested by the Recorder, generally, to appear in all cases and prosecute, when this service was actually performed by a person designated by him as assistant or deputy?

"Fifth.—If it was the official duty of the City Attorney to represent the State in such prosecutions, is he entitled to compensation, such as is allowed district or county attorneys, or attorneys appointed by justices of the peace in similar cases for like services, or is he restricted to the salary fixed by the ordinance stated?

"Fifth.—Do the facts that no affidavits were made and no judgments entered against the persons tried for the offenses, affect appellee's right to recover under the facts stated?"

We answer the first question in the negative. Article 3600, Sayles' Civil Statutes, which was in force when the right claimed herein accrued, provided in substance, that when a convict who was committed to jail in default of payment of fine and costs, has satisfied such fine and costs by labor in the work house or upon the public works of the county, the county judge shall issue a warrant upon the county treasurer in favor of each officer to whom costs may be due for the amount of his costs, which shall be paid out of the road fund of the county, or any other fund not otherwise appropriated. The costs that the county is required to pay are such as have been legally adjudged against the convict; if the officer had no right to collect the costs as against the convict, the

county would be under no obligation to pay such fees if claimed of it by such officer. The fact that the county may have illegally appropriated the labor of the convict, would not give a right against the county to any officer who was claiming fees against such illegally convicted person. The officer had no right under such circumstances to the fees, and no right to the labor of the convict. The fact that the convict may have been wronged by causing him to labor upon the public works contrary to law, cannot give a right of action in favor of another who had no claim to his labor.

To the third question we answer, that it was the duty of the City Attorney of Houston to represent the State in such prosecution. Sec. 16, of the Charter of the City of Houston, makes it the duty of the City Attorney to represent "the State in person or by deputy in the Recorder's Court, if necessary, when requested so to do." (See Special Laws, 23d Legislature, p. 19, sec. 16).

If the Legislature had the power under the Constitution to confer the authority, the language quoted is sufficient to authorize and require the City Attorney of the city to represent the State, under the circumstances named. Having answered that it was the official duty of the City Attorney to represent the State, it is unnecessary for us to answer the fourth question.

To the fifth, we answer, the City Attorney would be entitled to the same fees for representing the State in the character of cases named as would be payable to the District or County Attorney for like services. The ordinance mentioned only prescribed the compensation of the City Attorney for services rendered to the city. The city council had no authority to prescribe fees for the City Attorney where he represented the State in criminal cases. Johnson v. Hanscom, 90 Texas, 321.

To the fifth question (2), we answer, that the Recorder of the city could only acquire jurisdiction over the cases in the manner that a justice of the peace could. By art. 936, Code Crim. Proc., it is prescribed that a justice of the peace may issue a warrant of arrest when the offense is committed in his view. If the offense is not committed in his presence, then the power to issue a warrant of arrest is given in this language, contained in art. 937, Code Crim. Proc.: "Upon complaint being made before any justice of the peace, or any other officer authorized by law to administer oaths, that an offense has been committed in a county which a justice of the peace has jurisdiction finally to try, the justice or other officer shall reduce the same to writing, and cause the same to be signed and sworn to by the complainant, and it shall be duly attested by such justice or other officer before whom it was made, and when made before a justice of the peace, or when returned to him, made before any other officer, the same shall be filed by him." Article 938 prescribes the requisites of a complaint upon which the magistrate is authorized to issue a warrant. We are of opinion that a complaint in writing charging the parties with an offense against the laws of the State was necessary in each case to give the Recorder ju-

risdiction, unless the case was included in one of the exceptions named in the Code of Criminal Procedure, and that a judgment entered without written complaint having been made, except in the instance stated, would be void, and would not entitle the City Attorney to collect from the county the fees claimed in such cases. Wilcox v. Williamson, 61 Miss., 310; Prell v. McDonald, 7 Kans., 426; Flack v. Harrington, 12 Am. Dec., 170.

In the case of Wilcox v. Williamson, the plaintiff had been tried and convicted before the defendant as a judicial officer without complaint being made, for which plaintiff sued for damages for false imprisonment, and the court held the defendant liable. The court said:

"Without complaint, affidavit, or charge of any sort, he caused the plaintiff to be brought before him, and without the preferring of any charge of any kind proceeded or pretended to try, sentence and imprison him. He was in so doing not a judge, but a mere trespasser. To hold such action judicial would be equivalent to say that he was a judge, not of any court, but of the citizens at large, with power to arrest at his own pleasure and try at his own volition, without any charge. So far as the declaration shows, the arrest was not 'upon the view,' or while the party was actually committing or about to commit any violation of any law in the presence of the party making the arrest, but it took place by the order of the mayor alone, under none of the circumstances warranted by the statute, and the trial was entirely without an accusation of any kind."

The rule applied in civil cases, that on a collateral attack upon the judgment of a court of general jurisdiction the existence of facts necessary to give jurisdiction will be conclusively presumed, rests upon public policy, it being found by experience that any other rule would greatly endanger the rights of property held under judgments. Crawford v. McDonald, 88 Texas, 626. The reason for the rule does not apply in criminal cases under which no rights of property arise; the effect of such judgment is expended upon the defendant.

No formal judgment was necessary in the Justice's Court and none would be required in the Recorder's Court, which must be governed by the same rules of proceedure. Any entry showing the result is a sufficient judgment.

Recurring to the second question propounded, we answer, that under the Constitution and laws of the State, and the city Charter, the Recorder of the City of Houston had jurisdiction of violations of the Penal Code, of which justices of the peace would have jurisdiction.

Article 98, of the Code of Crim. Proc., is in the following words: "Mayors and recorders of incorporated cities or towns shall have and exercise the same jurisdiction as justices of the peace within the limits of their respective corporations, and the provisions of this Code governing justices' courts shall apply to mayors' and recorders' courts." See, art 929, Code Crim. Proc.

Section 13, of the Charter of the City of Houston, after defining the

judicial powers of the Recorder, contains the following language: "And such as may be conferred by the general laws of the State on mayors and recorders." Under the article of the Code of Criminal Procedure above quoted, the authority to try such offenses against the penal laws of the State as justices of the peace might try, vested in the Recorder of the City of Houston so soon as the office was created. The language quoted from the 13th section of the Charter shows the specific intent of the Legislature to apply the general laws to that city. It follows that if the Legislature was not prohibited by the Constitution to enact the laws which we have quoted, the Recorder had all the judicial power requisite to try the classes of cases inquired about.

In the case of Leach v. The State, 36 S. W. Rep., 471, the Court of Criminal Appeals held that a law conferring upon a municipal officer—a city judge—authority to try offenses against the laws of the State, was unconstitutional. In support of that position, the learned judge who wrote the opinion referred to Ex parte Ginnochio, 30 Texas App., 584; Ex parte Towles, 48 Texas, 414, and Gibson v. Templeton, 62 Texas, 555. All of the cases cited arose under the Constitution prior to the adoption of the amendment to article 5, in 1891, which was adopted to abrogate the construction given in those cases to the Constitution; they are not in point in this case. The cases are not authority upon the question before us for the further reason that the question under consideration was not involved in either of them. In the Ginnochio case, the question before the court is thus stated by Judge Davidson: "Having reached this conclusion as to the legislative power, the next inquiry which presents itself is, does the charter confer upon the city court exclusive jurisdiction to try and determine all offenses against the Sunday law committed within the limits of said city whether arising under the State law or municipal ordinances, and if so, is such provision constitutional?" It will be seen that the question in that case was, whether the Legislature had the power under the Constitution as it then existed, to deprive the justices courts of any of the jurisdiction conferred upon them by the Constitution.

The cases of Ex parte Towles and Gibson v. Templeton each involved the question of the power of the Legislature to give to the District Court jurisdiction over subjects not embraced in the Constitution. That question is not before this court, and those cases having no bearing upon the issue being considered, we deem comment upon them unnecessary; for whether they were correctly decided or not, has become unimportant by reason of the amendment to the fifth article of the Constitution.

We understand the decision in Leach v. The State to rest upon the ground: that municipal officers are not State officers; and the Legislature cannot confer upon municipal officers the judicial power of the State. If the Constitution created no courts, and contained no provision on the subject, the Legislature would have the power to create such courts as it might find to be necessary and to distribute the judicial power

of the State as it might deem best.   This proposition will not be denied.
Where is the prohibition?

The authority to create municipal corporations and courts, is not de-
rived from the Constitution; it is inherent in the legislative department
of the State, and the provisions of the Constitution are limitations upon
the exercise of those powers.   This is a familiar doctrine which is well
expressed in State v. Helfrid, supra, in this language:   "As a prelim-
inary to this question, I will merely remark, that it is an axiom that
does not require the aid of reasoning to vindicate, that the Legislature
of the State, as the representatives of the people, possess unlimited
power over all subjects of legislation not taken away by the Constitu-
tion; inasmuch therefore as they are not forbidden by that instrument,
they had the power to pass the act of incorporation and to confer on
them any privileges within the pale of legislation, and among other
things which no one has pretended to deny, the power to elect a Re-
corder and to constitute a tribunal to decide questions arising under
their by-laws."   All power exercised by a municipal corporation is de-
rived from the State; a corporation has none other.   Its ordinances are
the result of legislative power of the State, which might be exercised by
that department itself, but usually delegated to a local legislative body.
The judicial power which municipal officers exercise in enforcing the
ordinances of the city or town is derived from the State, and is a part
of the judicial power of the State, which, in the absence of constitutional
provisions, might be committed to the courts of general jurisdiction,
but, for convenience is generally intrusted to local officers called muni-
cipal officers.   The recorder of a town or city is an officer created by
the State, exercises judicial functions derived from the State, and in
that sense, is an officer of the State.   When considered with reference
to the territorial limits of his official authority, and the immediate
source of the laws enforced, he is denominated a municipal officer.   A
sheriff is a county officer, and a justice of the peace is a precinct officer,
when we consider the territorial limits of their authority, yet they are
State officers when we look to the source of their power and the laws
by which they are governed.

In Blessing v. City of Galveston, 42 Texas, 661, the power of the
Legislature to confer judicial authority upon the Recorder of the City
of Galvston under the Constitution of 1869, was the subject of inves-
tigation, and Judge Moore said:   "We cannot consent to give the sections
of our Constitution conferring and distributing the judicial power so
limited and technical construction and application.   We think its lan-
guage vesting judicial power 'in such inferior courts and magistrates
as may be created in this Constitution, or by the Legislature under its
authority' entirely sufficient to warrant the Legislature, when creating
municipal corporations, in the absence of any restriction, to create local
municipal tribunals as an essential necessity to the well-being of such
local municipal corporations."   This case recognizes that the judicial
power conferred upon the officers of towns and cities is a part of the

judicial power of the State, and that such judicial authority might be conferred upon municipal courts.

In Johnson v. Hanscom, 90 Texas, 321, the right of the Recorder of Galveston to recover from the county for fees accruing to him from the trial of offenses against the laws of the State was involved, and this court held that he could recover; however, the constitutional objection was not presented to, nor discussed by, the court in that case. In the opinion, delivered by Chief Justice Gaines, the following explicit language is used: "While acting as Justice of the Peace, the Recorder of the city is, to all intents and purposes, a Justice of the Peace; and since the criminal jurisdiction of a justice court extends only to prosecutions for violation of certain penal laws of the State, he is, as to the functions of that office, a State officer. Writs and process issued by him are State writs and State process, and hence they must run in the name of the State of Texas." The constitutional court of South Carolina had the same question before it in State v. Helfrid, 2 Nott & McCord, 237; the court said: "But it is said, that he is exclusively the creature of the corporation, and therefore not entitled to decide on questions over which they possessed no power. This may be true so far as he derives his power from them, but the very act under which he is authorized to take cognizance of this case pro hac vice constitutes him an officer of the State, and he may be literally said to be serving two masters, the corporation and the State, the former in respect to the power derived from it, and so in the latter."

The conclusion stated by Judge Gaines, as to the dual character of the Recorder of the City of Galveston is well sustained by authority and sound reason. We might cite many other authorities upon the same subject, but we deem it unnecessary; we call attention to those hereinafter cited under another proposition, which bear also on this question.

The objection that the jurisdiction to enforce the general penal laws of the State cannot be vested in a judicial officer of a city or town is forcibly presented by Judge Davidson in Leach v. The State, from his standpoint, but we think it cannot be maintained except upon one of the following grounds:

First. That there is inherent in the State a municipal judicial power, which the Legislature can commit to municipal officers only; and also a judicial power of the State which can be conferred by the Legislature upon State officers alone. No one contends that such a classification of the judicial power exists, or could exist, but we state it in order to demonstrate the proposition that the judicial power of the State continues to be such whether exercised by officers of the State or by officers of a city or town, for it must be true that the power remains the same after it has been delegated that it was before. It will not be denied that the phrase "judicial power of the State" embraces all the judicial power that the State possesses, and we think that it continues to be power of

the State although the State may have selected municipal officers as the means of exercising that power.

Second. All judicial power being derived from, and a part of the judicial power of the State, we must find support for the position which forbids conferring that power upon a municipal officer in the prohibitory provision of the Constitution itself. If such a prohibition exists in the Constitution, it must be found in section 1, article 5, of that instrument, and in other sections of the same article which define the jurisdiction of the different courts named in section 1, which section—as it is now in force—is in the following words: "The judicial power of this State shall be vested in one Supreme Court, in courts of civil appeals, in courts of criminal appeals, in district courts, in county courts, in commissioners' courts, in courts of justices of the peace, and in such other courts as may be provided by law. The Criminal District Court of Galveston and Harris Counties shall continue with the district, jurisdiction and organization now existing by law until otherwise provided by law. The Legislature may establish such other courts as it may deem necessary, and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto."

So far as it affects this question, the section repealed was practically the same as that quoted above, except that it did not contain this clause: "The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto."

In the case of Ex parte Towles, before cited, and in some other cases the Supreme Court had held that by adopting article 5, of the Constitution, a complete judicial system was established and all of the judicial power of the State was vested in the several courts named in section 1, as it was distributed in the several sections with reference to each particular court. The language "and in such other courts as may be established by law," was nullified by the decisions of the Supreme Court in the cases mentioned. The courts and lawyers were in constant trouble as to the jurisdiction of courts, which greatly embarrassed the administration of justice; in fact, there were some subjects of which no court had jurisdiction.

When the Legislature of the State came to formulate the amendment to be submitted to the people, one of the principal objects was to avoid the force of that class of decisions and to render elastic the judicial system provided for in the Constitution, so that the needs of the State, which might develop in its future growth, could be provided for by the Legislature from time to time. That there might be no question of the proper construction of the limitations placed by the Constitution upon the power of the Legislature to create courts, the last clause of the section copied above was introduced, and the people of the State adopted the

amendment for the purpose of ridding the State of the incubus which the construction contended for had saddled upon it.

In Ex parte Towles, before cited, Chief Justice Roberts said: "It was certainly the object of the framers of the Constitution to mark out a complete judicial system, by defining generally the province of each of the courts, by reference to the objects confided to each, and the relation of each to the others. To that extent, it must be held to be permanent, and not subject to change by the action of the Legislature, except as a change may have been provided for. This is plainly, though incidentally, indicated by a special provision for a change in the jurisdiction of the County Court." (Citing Const., 1876, art. 5, sec. 22.) The foregoing excerpt from the opinion in Ex parte Towles is practically copied in the opinion of Leach v. The State, and seems to form the basis and ground-work of that opinion. Lack of authority in the Legislature to change the jurisdiction conferred upon the several courts named in article 5, and among which the judicial power of the State was distributed, constitutes the foundation upon which rests the construction given the Constitution as it existed before the amendment thereto which is now in force. For the sake of argument we concede that, without the last sentence of section 1, article 5, the Legislature would, by necessary implication, be prohibited to confer upon any other court than those named, jurisdiction over any subject which was expressly given by the Constitution to any of the courts named therein, because the Legislature would have no power to take from the courts named in the Constitution any jurisdiction conferred upon them, therefore, could confer none upon "other courts" if created; but, by the last clause of section 1 the prohibitive effect of the first part of that section is completely modified, and the full power of the Legislature over the subject of creating inferior courts is thereby restored. Authority is expressly given to create and organize other courts and to confer upon them such jurisdiction as may be deemed necessary; and to enable the Legislature to accomplish this, power is conferred to conform the jurisdiction of the district and other inferior courts to that of the courts created and organized by the Legislature; that is, the courts created by the Legislature might be invested with jurisdiction concurrent with the district or other inferior courts, or they might be empowered to exercise the judicial functions which, by the Constitution, were conferred upon the district or other inferior courts, within a given territory, to the exclusion of the constitutional courts. In other words, the effect of the language is to place the subject at the complete disposal of the Legislature so far as inferior courts are concerned.

But, it is said, that while the Legislature might create a State court and commit to it the judicial functions which the Constitution conferred upon a justice of the peace, or either of the inferior courts, to be exercised within the limits of a city, as a State court, by whatever name it might be called—for example, State Recorder for that city —yet the same power could not be given to an officer to be exercised

within the same limits if he is called City Recorder. In other words, the same creative power can bring into existence two courts and confer upon each a part of the judicial power of the State, to be exercised within the same territorial limits, calling one a State Court and the other a Municipal Court, the former to enforce State laws and the latter municipal laws, yet that creative power cannot combine in the one court the exercise of judicial functions over subjects embraced in the general laws of the State and in local laws of the corporation. If this cannot be done, there must exist in the Constitution some express or necessarily implied prohibition. Lytle v. Half, 75 Texas, 128. Courts have no right to declare an act of the Legislature void because it is against the spirit of the Constitution; when a judge pronounces a law to be contrary to the Constitution, he must be able to put his finger upon the provision of that instrument which prohibits the act, or from which the prohibition necessarily arises. We find, in the Constitution, no such language, nor do we find any provision from which such prohibition can be fairly implied. On the contrary, considering the language of the last sentence of section 1, article 5, as amended, and the circumstances under which it was adopted, we think that it clearly embraces full authority to the Legislature to make such provision with regard to the enforcement of the local laws of a city, and the general laws of the State within a given territory as it might find to be necessary.

The following authorities support the conclusions at which we have arrived—that the Legislature had the power to confer jurisdiction upon a municipal court to try offenses against the general penal laws of the State: State v. Helfrid, 2 Nott & McCord, 233; Nugent v. State, 18 Ala., 521; Waldo v. Wallace, 12 Ind., 569; Gulick v. New, 14 Ind., 93; Gray v. State, 2 Harr. (Del.), 92; Birch v. Hardwick, 30 Gratt. (Va.), 24; Hutchins v. Scott, 4 Halsted (N. J.), 218.

In the case of Leach v. The State, Judge Davidson, in delivering the opinion of the court, said: "If the Legislature may delegate authority to a municipal court in one town to enforce the general laws of the State it may do so in every town; and if it can confer authority upon said courts to take jurisdiction of a misdemeanor, then it may do so as to all this class of offenses. If, as to misdemeanors, then the reasoning would be equally as cogent that it could do so as to all felonies, for there is no constitutional objection in the way as to one class of offenses that does not obtain equally as to all classes of offenses. If this power can be delegated to a municipal court in matters appertaining to criminal cases, then it can be so delegated with equal propriety to all classes of civil actions, and we should have the anomalous condition of a municipal court exercising concurrent original jurisdiction in civil and criminal cases throughout the State at the same time with district courts, county courts and justices courts, and also at the same time could be made to exercise appellate jurisdiction co-extensive with district and county courts. Hence such jurisdiction would be original with district, county and justice courts, and at the same time appellate without.

conforming the jurisdiction of the constitutional courts to that conferred upon the municipal courts."

This argument implies an apprehension that the Legislature might abuse the power to create other courts, and especially to combine the administration of the general laws of the State and the local laws of a municipal government in one court to such an extent as to greatly impair or destroy the judicial system of the State. This view of the question is met by the able opinion in the case of State v. Helfrid, supra, in this language: "It may be said that, pursuing this course of reasoning to an extreme, a jurisdiction might be thus created, treading so closely on the heels of the Courts of Sessions and Common Pleas, as to render it difficult to distinguish their footsteps. But so long as there is a jurisdiction possessing a controlling power over it, the judges of which are appointed in the manner prescribed by the Constitution, the citizen has all the security which was deemed necessary, and which is provided by the Constitution; and for myself, I am unable to discover any provision in the Constitution which precludes the Legislature from providing by law for a court exercising unlimited jurisdiction, and for the mode of appointing a judge so long as there is a jurisdiction to which it is subordinate; and I think this view is fully supported by the powers exercised by the County Courts; in many cases their jurisdiction was unlimited, and if they might in one instance encroach on the jurisdiction of the Common Pleas and Sessions, I see no point at which they might be arrested."

Our Constitution regulates the jurisdiction of the appellate courts of this State as follows: "The Court of Criminal Appeals shall have appellate jurisdiction co-extensive with the limits of the State in all criminal cases of whatever grade, with such exceptions and under such regulations as may be prescribed by law."

"The Supreme Court shall have appellate jurisdiction only, except as herein specified, which shall be co-extensive with the limits of the State. Its appellate jurisdiction shall extend to questions of law, arising in cases of which the Courts of Civil Appeals have appellate jurisdiction under such restrictions and regulations as the Legislature may prescribe."

"Said Courts of Civil Appeals, shall have appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all civil cases of which the District Courts and County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law; provided, that the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or error. * * * * * Said courts shall have such other jurisdiction, original and appellate, as may be prescribed by law."

Under the foregoing provisions, the Legislature can adjust the jurisdiction of each and all of the appellate courts so as to give the right of appeal from any court it may create, whether the matter be of a criminal or civil nature, to the same extent that the right of appeal can be given

from the courts named in the Constitution.   With this power of super-
vision over all of the inferior courts, there is little danger of any injury
to the people from such courts as the Legislature may organize under
the provisions of the Constitution.   These provisions with regard to
the jurisdiction of the appellate courts, taken in connection with the
last sentence of section 1, of article 5, enable the Legislature to so
mould the judicial system of the State as to meet the wants of the people
hereafter.

The present law, which confers upon mayors and recorders the same
jurisdiction as is given to justices of the peace, has been in force in this
State since 1856, and none of the calamities which might be appre-
hended, have yet befallen the country.   We believe that an examination
of the court reports of the different States would show that it is not an
uncommon practice to enact just such laws as that which is now under
consideration.   The limitations contained in the Constitution, as com-
pared with the subjects over which the Legislature may exercise au-
thority, are few, and in all those matters where there are no limitations
the Legislature might abuse the power vested in it, and the argument
which is contained in the extract from the able opinion of Judge David-
son can be as well applied to show the danger of allowing the Legislature
unlimited or unqualified powers over other subjects.   Whatever may be
the danger of such a system, the courts have no authority to determine
the policy of the government, nor to adjust the Constitution to meet a
supposed danger.   If the people choose to trust the Legislature with
the power to enlarge the judicial system of the State, or to destroy it,
the courts cannot interfere on the ground that such authority might be
carried to an extreme which would be destructive of the system itself.

We have reviewed the opinion in Leach v. The State, because it is
the decision of a court of last resort upon a question over which it has
final and conclusive jurisdiction, so far as it applies to criminal matters—
The decision, if followed, would seriously affect the administration of
the civil laws of the State, of which this court has final jurisdiction—
and for the further reason that Judge Davidson has stated the objections
to the conferring of the jurisdiction in question in the most forcible
manner of which they are capable; and we have felt it our duty, when
compelled to differ with that court upon such a question, to state plainly
the reasons which lead to our conclusions.

A conflict between the decisions of the two courts of last resort is
greatly to be regretted, and should be avoided whenever it is possible
to do so.   But the question under consideration is of such serious im-
portance in its relation to the civil branch of the law, that we cannot
agree to the limitations upon legislative power which must result from
the rule laid down in Leach v. State.   In our view, such a construction
of the Constitution would restore the judicial system to the narrow
limits prescribed for it by the decision of Ex parte Towles and other
cases, and would make article 5, of the Constitution the misfit and

hindrance to justice which it was before the amendment, and which so seriously afflicted the State during its continuance.

We answered the third question upon the assumption that there was no County Attorney in Harris County at the time the claim originated, and we omitted to answer the fourth question because in that view of the case, it was unnecessary. Upon further examination, we have concluded, that we should answer those questions as if there were in the county at the time, a County Attorney, and we now make the following answers to those questions in addition to what we have said before:

Article 5, sec. 1, of the Constitution, so far as it is pertinent to this question, is in these words: "A County Attorney for counties in which there is not a resident District Attorney shall be elected by the qualified voters of each county, who shall be commissioned by the Governor and hold his office for the term of two years. * * * The County attorneys shall represent the State in all cases in the district and inferior courts in their respective counties; but if any county shall be included in a district in which there shall be a District Attorney, the respective duties of District attorneys and County attorneys, shall, in such counties, be regulated by the Legislature. The Legislature may provide for the election of District attorneys in such districts as may be necessary."

The Constitution vests in the County Attorney the authority, and imposes upon him the duty, of representing the State in the District and inferior courts, and if there was a County Attorney in Harris County then the provision of the Charter of the city of Houston which authorized the City Attorney to exercise the powers conferred upon the County Attorney is contrary to the provision of the Constitution above quoted. State v. Moore, 57 Texas, 307. In that event the City Attorney would have no official right to represent the State before the Recorder and could not be entitled as City Attorney to fees for doing so.

Article 38, of the Code of Criminal Procedure provides that when any District or County Attorney shall fail to attend any term of the District, County or Justice Court, the judge of the said court or such justice may appoint some competent attorney to perform the duties of such District or County Attorney, who shall be allowed the same compensation for his services that are allowed to the District or County Attorneys; but the appointment could not extend beyond the term at which it was made." Exercising the powers of a Justice of the Peace, the Recorder could only appoint an attorney to represent the State in case the County Attorney did not appear, and since the Recorder has no term of court, the appointment should be made in each case. A general request, or even an appointment by the Recorder, to represent the State in all cases coming before him, would be void and confer no right upon the attorney who might appear thereunder. The right of the officer, or of such person as might represent him, to collect from the county, fees in criminal cases, depends upon such officer or person having a legal right to such fees as against the convict. If the City Attorney had no authority

under the rules stated herein, to represent the State, then, under the facts stated, he would not be entitled to collect costs from the county, accruing in cases in which he appeared without authority.