TUCKER et al. v. TUCKER et al.　(No. 2848.)*

(Court of Civil Appeals of Texas. Texarkana.
Oct. 12, 1923. Rehearing Denied Oct. 18,
1923. Writ of Error Granted Oct. 26, 1923.)

1. Courts ⚖═43—Legislature held authorized
to create courts other than those named in
Constitution.

Under Const. art. 5, § 1, as amended in 1891
authorizing the Legislature to establish such
other courts as it may deem necessary, and
to prescribe the jurisdiction and organization
thereof, and to conform the jurisdiction of the
district and other inferior courts thereto, the
Legislature may create courts other than those
named in the Constitution.

2. Evidence ⚖═25(1)—Appellate court will take
judicial notice of county seat.

The appellate court will take judicial no-
tice that Texarkana is not the county seat of
Bowie county.

3. Courts ⚖═43—Legislature held authorized
to create and empower special court to hold
terms at places other than county seat in
county where located.

Notwithstanding Const. art. 5, § 7, provid-
ing that a district judge shall hold the regular
terms of his court at the county seat of each
county in his district, it was within the au-
thority of the Legislature to create a special
court having some of the jurisdiction of the
district court and to empower it to hold its
terms at a place other than the county seat
of the county in which it was located.

Appeal from Texarkana Court at Law,
Bowie County; Sid Crumpton, Judge.

Suit by Jesse Tucker against Ludie Tuck-
er, Idell Turner and others, minors, by guard-
ian ad litem, and others. Decree for plain-
tiff and defendant minors appeal. Affirmed,
and rehearing denied.

Wheeler & Robison, of Texarkana, for
appellants.

Keeney & Dalby, of Texarkana, for appel-
lees.

HODGES, J. This suit was originally
filed in the district court of Bowie county
by Jesse Tucker, seeking to partition cer-
tain lands situated in Bowie county, and
within the limits of commissioners' precinct
No. 1. A number of cotenants, among whom
are the appellants in this suit, were made
parties defendant. The appellants are mi-
nors, and were represented in the trial by
Wheeler & Robison as guardians ad litem.
Some time after the suit was filed and after
the service of citation upon the appellants
and other defendants but before they answer-
ed and before any guardian ad litem had
been appointed, the Legislature passed an
act creating what is known as the Texarkana
court at law. (See Acts of the 38th Legis-
lature, p. 135.) After that act took effect,

and in obedience to its provisions for the
transfer of causes from the district court of
Bowie county, this suit was regularly trans-
ferred and placed upon the docket of the
Texarkana court at law. Thereafter the ap-
pellants answered through their guardians
ad litem. Among other defenses they chal-
lenged the jurisdiction of the Texarkana
court at law, upon the ground that the act
creating that court was unconstitutional.
They also denied generally that the plaintiff
in this suit had any interest in the land
sought to be partitioned.

The plea to the jurisdiction of the court
was overruled. The case was then tried up-
on its merits, and a decree of partition ren-
dered in accordance with the prayer of the
plaintiff. From that judgment the appellants
have appealed, and present as the principal
ground for a reversal of the judgment below
the action of the court in overruling their
plea to its jurisdiction.

The material provisions of the act referred
to are as follows:

"Section 1. There shall be and is hereby
created and established, a court of record in
Bowie county, Texas, to be called and known
as the 'Texarkana court at law.' "

Section 2 limits the territorial jurisdic-
tion to commissioners' precinct No. 1 of
Bowie county, which includes the city of
Texarkana. Section 3 confers upon the Tex-
arkana court at law the civil jurisdiction at
law and in equity heretofore exercised by the
district and county courts of Bowie county,
except (1) suits by the state to recover es-
cheats or penalties; (2) cases involving of-
ficial misconduct or removal from office;
(3) contested election cases or proceedings;
(4) writs and proceedings of quo warranto
and prohibition; and (5) probate matters.
It is further provided that the court should
have appellate jurisdiction of all civil and
criminal cases in which appeal is allowed to
the county court from any justice or mayor's
court or corporation court. Section 4 fixed
the city of Texarkana as the location for the
court, and provided for holding four terms
each year. Sections 5 and 6 provided for the
appointment of a judge and a clerk by the
Governor, to hold office until the next gen-
eral election, and to be elected every two
years thereafter. The salary of the judge
was fixed at $3,600 a year. Section 16 au-
thorized the judge of the court to appoint
jury commissioners for the purpose of select-
ing jurors in accordance with existing law.
Section 22 provided for the transfer of cer-
tain classes of cases then pending on the
dockets of the district and county courts to
the Texarkana court at law. Section 23 is
as follows:

"The jurisdiction of the district and county
courts of Bowie county, and of the corporation
court of the city of Texarkana, Texas, is

---

⚖═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

255 S.W.—41　　　　　　　*Judgment reversed 257 S. W. ——.

hereby conformed to the changes made by this act."

In the emergency clause it is recited that the crowded condition of the county and district courts of Bowie county creates an imperative public necessity for the immediate creation of this court.

Prior to 1891, section 1 of article 5 of the Constitution read as follows:

"The judicial power of this state shall be vested in one Supreme Court, in a Court of Appeals, in district courts, in county courts, in commissioners' courts, in courts of justices of the peace, and in such other courts as may be established by law. The Legislature may establish criminal district courts with such jurisdiction as it may prescribe, but no such court shall be established unless the district includes a city containing at least thirty thousand inhabitants as ascertained by the census of the United States or other official census; provided, such town or city shall support said criminal district courts when established. The criminal district court of Galveston and Harris counties shall continue with the district, jurisdiction and organization now existing by law, until otherwise provided by law."

In construing the Constitution as it then stood, our Supreme Court held that this and other appropriate provisions created a complete judicial system for the state, naming the courts, and prescribing their jurisdictional powers and limitations; and that the Legislature had no authority to add to, take from, or modify the judicial machinery thus constructed. Ex parte Towles, 48 Tex. 413. In other words, the entire field of judicial activity was filled, and there was no room for the establishment of any other kind of a state court. The amendment adopted in 1891 preserved the language of the original section, but added the following:

"The Legislature may establish such other courts as it may deem necessary, and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto."

[1] That the Legislature may now create courts other than those named in the Constitution is too plain for argument. If judicial authority upon that proposition is needed, the following cases are sufficient: Harris County v. Stewart, 91 Tex. 143, 41 S. W. 650; Carter v. M., K. & T. Ry. Co., 106 Tex. 137, 157 S. W. 1169; Ex parte Abrams, 56 Tex. Cr. R. 465, 120 S. W. 883, 18 Ann. Cas. 45.

[2] The important inquiry in this appeal is, Did that act providing for the Texarkana court at law create one of these "other courts" referred to in the amended Constitution, or did it merely create another district court, and provide for its terms to be held at a place other than the county seat of Bowie county? We know judicially that Texarkana is not the county seat. As evidence that this is only another district court

appellants refer to the judicial powers with which the court is clothed. It is suggested that, because these are identical with most of the powers conferred by the Constitution upon district courts, there is no essential difference between the Texarkana court at law and any other district court; that calling the new tribunal by a different name does not make it a different court. It is true that, in determining the question of legal identity of courts, the subject-matter of judicial cognizance is a significant feature, but it is not a decisive test. In the case of Whitener v. Belknap, 89 Tex. 273, 34 S. W. 594, an act creating a special court for Bowie county, to be located at Texarkana, was held to be unconstitutional, because an examination of all the provisions of the act disclosed that it was only an attempt to establish another district court, and locate it away from the county seat. The facts of that case showed that the special court was clothed with all the powers of a district court; was to be presided over by the judge of the Fifth judicial district, in which Bowie county was situated; and to be served by the same clerk and other officers. In this instance a special judge and a special clerk are provided for, and a number of the subjects which come within the jurisdiction of district courts generally are withheld The Texarkana court at law is similar to the one upheld as valid in Carter v. Ry. Co., above referred to. In that case the Supreme Court was considering the constitutionality of an act creating a special district court for Grayson county. The validity of that court was assailed upon the ground that it was not created in compliance with the constitutional requirements for the establishing and organization of district courts. The duration of the court was limited to less than four years; the judge was to be appointed by the Governor, and to hold office only so long as the court existed; and no judicial district had been created prior to the establishment of the court. In answering certified questions, Chief Justice Brown, after quoting the constitutional amendment adopted in 1891, said:

"We are of opinion that the effect of that provision was to confer authority upon the Legislature to create emergency courts, and in their organization to provide the means by which the existing evils could be remedied expeditiously. The manifest purpose of the people in adopting that amendment was to enable the Legislature to meet such conditions as are present in this case, and it is the duty of the courts to act in harmony with the spirit of that amendment, and to give to it a liberal construction. It would be difficult to express more definitely the authority conferred in that clause of the Constitution—to 'establish such other courts as it may deem necessary'—which places in the discretion of the Legislature the character and number of courts that may be created as well as the manner in which the of-

ficers shall be chosen. The territory over which the jurisdiction of such court may be exercised and the subjects upon which its authority may be exerted are at the discretion of the Legislature."

He also referred to the former decision rendered in the case of Whitener v. Belknap, supra, saying:

"We note here that this court held that the Legislature did not attempt to exercise the powers conferred by this article of the Constitution in enacting the law under examination in Whitener v. Belknap, * * * hence the reasoning in that case is not applicable here."

An important difference between the Grayson county case and this case lies in the fact that, under the act creating the Grayson county special court, the terms of that court were to be held at the county seat, while in this case the terms of the Texarkana court at law are to be held at Texarkana, which is not a county seat.

[3] Conceding, then, as we must, that the Legislature may now create special courts with jurisdiction co-ordinate with that of the district and county courts, the question is: Can the Legislature empower such special court to hold its terms at a place other than the county seat of the county in which it is located? That precise question has never been passed on by any appellate court in this state, so far as we are able to learn. However, we are of the opinion that the Legislature had such authority.

In providing for district courts, the Constitution says (section 7 of article 5):

"The state shall be divided into as many judicial districts as may now or hereafter be provided by law, which may be increased or diminished by law. For each district there shall be elected by the qualified voters thereof, at a general election, a judge. * * * He shall hold the regular terms of his court at the county seat of each county in his district at least twice in each year, in such manner as may be prescribed by law."

The foregoing is the only provision of the Constitution which undertakes to direct where, within its territorial limits, the terms of a court shall be held. This language was manifestly intended to apply to district courts, the kind which was then being created. It is a part of the original Constitution as it was written in 1876. The omission of similar language in the amendment adopted 15 years later, in an effort to remove the handicap on legislative authority, is suggestive of an intention to leave the place of holding the terms of special courts to the discretion of the Legislature; in fact, the very emergency which calls for the creation of other special courts may not be adequately met, unless those courts are permitted to sit at places other than the county seats. The growth of large commercial and industrial towns and cities which are not county seats, and which furnish the greater portion of the litigation, both civil and criminal, in many counties, creates situations where the public convenience may well demand that trial courts should sit at places other than the county seats. There appears no good reason why this construction should not be placed upon the Constitution, even if its terms were of doubtful meaning. In construing our Constitution the courts can act upon the assumption that it was framed for the good of the people in creating adequate governmental machinery for supplying the service which the people have a right to demand. Some of its provisions are designed to protect the inherent rights of the citizens against governmental encroachment, while others are intended to direct legislative activity in providing the agencies and regulations essential to good government. It may be that, in passing upon the powers of the Legislature to enact measures which invade the personal and property rights of the citizen, the language of the limitations should be given their broadest meaning, to the end that oppression may be prevented. But when passing upon those measures which injure no one, but which provide for the welfare of many, constitutional restrictions should be held within limits as narrow as may be done without violating a plain purpose, to the end that inefficiency in government may be prevented.

In writing the judiciary article of the Constitution, the framers were not undertaking to impose restrictions on the powers of the lawmaking body, but to organize and set in motion a system which that body was to finish. We know, and the framers must have known, that one generation cannot foresee and provide for all the emergencies through which later generations must pass; and they must have intended to allow some reasonable legislative latitude in enlarging the judicial system to meet changing conditions which a growing population and an expanding commerce would be expected to produce. In the light of the language used in the amendment of 1891, which has been previously quoted, and keeping in mind the purpose for which it was adopted, there is no longer any ground for denying to the Legislature the power to supply the country with proper courts, and locate them where the general welfare demands. Keeping in mind also the oft-repeated ruling that the Legislature may enact any law which is not expressly or by clear implication prohibited by the Constitution, we conclude that the Legislature did not exceed its powers in creating the Texarkana court at law. The fact that the territorial jurisdiction of that court is limited to a subdivision of the county is of no special importance There is nothing in the Constitution which prohibits the subdivision of a county in creating the jurisdictional limits of courts of this character. If the Legislature has the

discretion to determine whether or not a court shall be created, and to decide when and where it shall hold its terms, it has the power to prescribe the territorial jurisdiction of such a court. To restrict this to less than a county violates no provision of the organic law, and conflicts with no established regulations which the Legislature has not the power to change.

The judgment of the court will be affirmed.

## On Motion for Rehearing.

If by amending the Constitution it was merely intended to enable the Legislature to create other courts to sit at county seats, with territorial jurisdiction extending over the entire county, that could have been done by multiplying the number of county and district courts already provided for, and there would have been no occasion for adding anything to the original article as it was written in 1876.

The motion for rehearing is overruled.