

# THE ATTORNEY GENERAL
# OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

July 3, 1950

Hon. B. F. McKee
County Auditor
Hidalgo County
Edinburg, Texas

Opinion No. V-1077.

Re: Constitutionality of statute
requiring favorable vote of
majority of voting qualified
property taxpaying voters in
county prior to levy, assess-
ment and collection of coun-
ty ad valorem tax for Farm
to Market Roads or for Flood
Control.

Dear Sir:

You have requested the opinion of this office as to the
validity of those sections[1] of H.B. 107, ch. 464, Acts 51st Leg.,
R.S. 1949, which require a favorable vote of a majority of the qual-
ified property taxpaying voters of the county, voting at an election
called for that purpose, before the county may levy the new tax for
Farm to Market Roads or for Flood Control purposes as author-
ized by the amendment to Article VIII, Section 1-a of the Constitu-
tion of Texas. H.B. 107 is presently carried as Article 7048a, V.
C.S.

H.B. 107 was enacted in pursuance to and in execution
of the provisions of the constitutional amendment proposed by H.
J.R. 24, which was adopted by vote of the people in the 1948 Gen-
eral Election. The pertinent provisions of H.J.R. No. 24 are the
following:

"Section 1. That Section 1-a of Article VIII of
the Constitution be amended so as to be and read as
follows:

" 'Section 1-a. From and after January 1, 1951,
no State ad valorem tax shall be levied upon any prop-
erty within this State for general revenue purposes.
From and after January 1, 1951, the several counties
of the State are authorized to levy ad valorem taxes
upon all property within their respective boundaries
for county purposes, except the first Three Thousand

---

[1] Secs. 7, 8, and 9.

Dollars ($3,000) value of residential homesteads, not
to exceed thirty cents (30¢) on each One Hundred Dol-
lars ($100) valuation, in addition to all other ad valo-
rem taxes authorized by the Constitution of this State,
provided the revenue derived therefrom shall be used
for construction and maintenance of Farm to Market
Roads or for Flood Control, except as herein other-
wise provided."

In view of the fact that the constitutional amendment
does not make the imposition of the tax contingent on an affirma-
tive vote of a majority of the qualified property taxpaying voters
of the county, you ask whether the Legislature could impose this
requirement.

At the outset we should examine the general purpose
and effect of this constitutional provision together with applicable
rules of construction.

Prior to the adoption of this constitutional amendment,
county ad valorem taxes for the purposes enumerated could not be
levied in excess of the maximum rates fixed by Section 9, Article
VIII of the Texas Constitution. The effect of the amendment was
to lift these maximum limits to the extent of authorizing counties
to levy an additional ad valorem tax not to exceed 30 cents on each
$100.00 valuation for the limited purposes of "construction and
maintenance of Farm to Market Roads or for Flood Control."

Since the constitutional amendment does not provide
the method and means by which the counties shall determine the
time, rate, and purpose (as between Farm to Market Roads and
Flood Control) of the tax, or how it shall be levied and collected,
it was within the power and duty of the Legislature to provide such
method and means. Tex. Const. Art. VIII, Sec. 3 and Art. III, Sec.
42. See Stratton v. Commissioners' Court of Kinney County, 137
S.W. 1170, 1177 (Tex. Civ. App. 1911, error ref.); Stevenson v.
Blake, 131 Tex. 103, 113 S.W.2d 525, 527 (1938).

By H.B. 107 the Legislature provided a method which
gives both the Commissioners' Court and the property taxpaying
voters a part in determining if, when, why and for how much the
newly authorized tax shall be levied. Such method has been pro-

vided by the Legislature for the levy of many local taxes.[2]

If the vote requirement of H.B. 107 were subject to two interpretations of legislative intent -- (1) as an unconstitutional attempt to limit the authority of the county to levy the tax and (2) as a valid step in the procedure or method for levy of the tax --, we would be compelled to follow the latter interpretation. As stated in Sutherland (3rd Ed.) on Statutory Construction:

> "It is constantly asserted by the courts that every presumption favors the validity of an act of the Legislature and that all doubts must be resolved in support of the act." (Vol. 2, Sec. 4509, p. 326.)

This rule is applicable to tax statutes the same as other statutes.

> "This rule that when a statute is attacked as unconstitutional, it is the duty of the courts, when the statute is subject to different constructions, to adopt such construction as will make the statute constitutional if the language will reasonably permit, is applied to tax statutes time and time again the same as to other statutes." (Cooley on Taxation (4th Ed. 1924) Vol. 2, Sec. 509, p. 1133.)

---

[2] Article 6078, V.C.S., provides that no tax for the purchase and improvement of lands for use as county parks may be levied "until the proposition is submitted to and ratified by the property taxpaying voters of the county at a general or special election held for that purpose . . . /and/ two-thirds majority of the property taxpaying voters . . . determine in favor of said tax." Articles 4436a-2 and 4436a-3 authorize the Commissioners' Courts in certain counties to levy a tax in stated amounts for creating a county health unit if the proposition to levy said tax is approved by a majority of the property taxpaying voters at an election called for that purpose. Articles 4478, 4494c, 4494g, and 4437a, dealing with county hospitals, all require that the voters of the county shall determine whether a tax for establishing and maintaining a hospital will be imposed. Articles 2352a, 2352b, and 2352c provide for the levy of a tax in a stated amount for the purpose of advertising the county and its county seat providing that a majority of the qualified taxpaying voters of the county shall, by a majority vote, authorize the Commissioners' Court to levy the tax. (These articles are simply cited as illustrative. No opinion is expressed as to their constitutionality.)

However, in our opinion the situation before us requires no resort to statutory construction. Here we have a statute which from the caption to the emergency clause clearly reveals that the Legislature intended to include the vote of the taxpaying citizens as part of the method for levying the tax. The constitutional amendment does not prohibit such procedure.[3] The Constitution does not clothe the Commissioners' Courts with any general power to levy taxes except as provided by the Legislature. Most functions of the Commissioners' Courts in the levying of ad valorem taxes are statutory, and in the absence of a constitutional provision to the contrary, the Legislature is authorized to pass statutes regulating the levying and assessing of county ad valorem taxes. Stevenson v. Blake, 131 Tex. 103, 113 S.W.2d 525, 527 (1938). It is noteworthy that, with few exceptions, the specific powers which have been conferred on Commissioners' Courts with regard to levying, assessing and collecting county ad valorem taxes have been conferred on said courts by statutes and not by the Constitution. The rule is that Commissioners' Courts have no general blanket authority over county business, but only such powers as are expressly given them by the Constitution and statutes. Canales v. Laughlin, 147 Tex. 169, 214 S.W.2d 451, 453 (1948).

The constitutional amendment being silent on the subject, the House Committee on State Affairs, 51st Legislature, asked this office if the amendment was self-enacting or if it required an enabling act such as H.B. 107 to provide a method for levy of the tax. Our reply by Opinion No. V-797, March 29, 1949, was in part as follows:

"Passing to a consideration of the remainder of H.J.R. 24, we may hold it self-executing 'if it supplies a sufficient rule by means of which the right given may

---

[3] "This Court has repeatedly held that no Act of the Legislature will be declared unconstitutional unless some provision of the Constitution can be cited which clearly shows that the Act is invalid. Texas National Guard Armory Board v. McGraw, 132 Tex. 613, 126 S.W.2d 627; Harris County v. Stewart, 91 Tex. 133, 41 S.W. 650; Brown v. City of Galveston, 97 Tex. 1, 75 S.W. 488, 9 Tex. Jur., pp. 477, 478, sec. 59.

"No provision of the Constitution has been pointed out which prohibits the enactment of the Act under consideration, . . ." The State of Texas ex rel. Carl Rector v. McClelland, Texas Supreme Court Reporter, Vol. 19, No. 9, p. 123; 224 S.W.2d 706 (1949).

be enjoyed and protected or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by which these principles may be given the force of law.'

"This excerpt from Cooley on Constitutional Limitations was quoted by the Supreme Court of Texas in Mitchell County v. City National Bank, 91 Tex. 361, 371, 43 S.W. 880, 883, when the court was determining whether or not the provisions of Section 7 of Article XI of the Texas Constitution were self-executing; i.e., said the court, whether 'the source of authority for making the levy and collecting the tax is the Constitution and not the act of the Legislature.'

" . . . .

"The Court reached the conclusion that the provisions of Section 7 of Article XI were not self-executing in the following analysis:

" 'The only parts of the constitution which bear upon this subject are section 9 of article 8, and sections 2 and 7 of article 11. Section 9 confers no authority upon any officer of a city or county to levy a tax for any purpose, but by the language, "No county, city or town shall levy more than one-half of said state tax . . . and for the erection of public buildings not to exceed fifty cents on the one hundred dollars in any one year," places a prohibition or limitation upon the power of the legislature to authorize counties to impose taxes for such purposes. Section 2 of article 11 expressly requires the enactment of a general law to carry its mandates into effect; and section 7 of the same article contains no grant of authority to levy a tax nor designation of any official by whom the tax specified is to be levied and collected, but is, in effect, a limitation upon the power of the legislature to authorize such corporations to create debts. In the sense that all laws in conflict with these prohibitions are void, section 9 of article 8 and section 7 of article 11 are self-executing; but, in so far as anything is required to be done to carry them into effect, they are not so, because they prescribe no rules by which any act could be done in the enforcement of their requirements.'

"Although the provisions of section 7 of Article XI expressly required future action by the Legislature (the vote of the taxpayer, and the amount of the tax,

were to be ascertained 'as may be provided by law'),
we think that the language of the court above quoted
precludes our holding that the last part of H.J.R. 24
is self-executing. There is no 'designation of any of-
ficial by whom the tax specified is to be levied and
collected;' nor is 'anything . . . required to be done
to carry . . . (it) into effect . . . because . . . no rules
. . . (are prescribed by) which any act could be done
in the enforcement of their requirements.' The Mitch-
ell case at least casts enough doubt on the matter to
fully justify the enactment of enabling legislation.

"Even if the main provisions of H.J.R. 24 are
self-executing, legislation could still be deemed de-
sirable for the purpose of 'providing convenient rem-
edies for the protection of the right secured, or of
regulating the claim of the right so that its exact lim-
its may be known and understood; but all such legisla-
tion must be subordinate to the constitutional provi-
sion, and in furtherance of its purposes, and must not
in any particular attempt to narrow or embarrass it.'
Cooley Constitutional Limitations, 8th Ed., Vol. 1, pp.
170, 171. The power of the Legislature to implement
the present amendment is indisputable because, should
it be regarded as self-executing, the machinery for its
enforcement could only be found in existing legislation
which is, of course, in the main, subject to repeal or
amendment at the pleasure of the presently constituted
legislative body."

In Section 13 of H.B. 107, the Legislature found the en-
abling act necessary in the following words:

"The fact that House Joint Resolution No. 24,
Acts, Fiftieth Legislature, has been adopted by the
people of Texas at the General Election held in this
State on the first Tuesday in November, 1948, and an
enabling act is necessary to authorize the levy, assess-
ment and collection of taxes provided for therein by
the several counties in this State, create an emergency,
and an imperative necessity that the Constitutional Rule
requiring bills to be read on three several days in each
House be suspended, . . . "

A full reading of the caption and body of the bill leaves
no doubt that the requirement for approval by a majority of the prop-
erty taxpaying voters was intended as an essential part of the meth-
od for levy of the tax rather than a restriction on the authority of
the county. Someone had to be authorized by the Legislature to act

on behalf of the county to determine (1) if any part of the newly authorized tax would be levied; (2) if so, how much and when; and, (3) whether for Farm to Market Roads, Flood Control, or both. H.B. 107 authorizes the Commissioners' Court by majority vote or upon petition of ten per cent of the qualified property taxpaying voters to submit these questions to the voters and levy the tax if and as the majority of the voters decide.

This procedure, whether authorized by constitutional provision or statute, has been held to be part of the levy of the tax. Crabb v. Celeste Ind. School Dist., 105 Tex. 195, 146 S.W. 528 (1912); San Saba County v. McCraw, 130 Tex. 54, 108 S.W.2d 200 (1937). In the Crabb case the Supreme Court of Texas held that an independent school district had no authority to levy and collect a tax on property annexed after the tax had been voted for the reason that Section 3 of Article VII provided a "mode of levying" which required a vote of "two-thirds of the qualified property taxpaying voters of the district, voting at an election held for that purpose." The court pointed out that in those cases which were cited as authority for upholding the levy the right of the property owner to participate in the proceeding with relation to the levy of the tax on his property was fixed by statute and not by the Constitution. The court said:

> "Here lies the important distinction. If we had no constitutional provision to grapple with, we would be constrained to hold that, where the legislative act gave the property owner the right to participate in the proceeding to determine whether or not the tax should be levied, another legislative act, authorizing an extension of the district where the tax had been voted, would subject the property within the extension subject to the tax, notwithstanding the non-participation of the property owner in the levy of the tax. This, however, is not the status of the case at bar; for here the right to participate in the levy of the tax is given the resident property owner by the Constitution, and the Legislature is denied authority to abridge that right. Where there is no constitutional inhibition, the power of the Legislature to enact laws is supreme and unlimited." (Emphasis ours.)

In addition to designating constitutional and statutory voting provisions as part of the proceedings for levy of the tax, the opinion in the Crabb case recognizes the unquestioned power of the Legislature, in the absence of constitutional prohibitions, to provide the method which counties shall use in levying taxes, including the power to confer on property taxpaying voters the right to participate in proceedings to determine if and when an authorized tax will be levied.

The decision of the Supreme Court of Oklahoma in Tilley v. Overton, 116 Pac. 945 (1911), fully recognizes and sustains this legislative power to prescribe the manner, time, and by what authority the levy of a constitutionally authorized tax may be made. In this case the legality of a school district levy for the year 1908 was attacked on various grounds, among which was the proposition that a portion of the tax authorized to be levied by the Oklahoma Constitution must be levied by the board of the district and not by a vote of the people. The constitutional provision there involved read as follows:

> " . . . school district levy, not more than five mills on the dollar for school district purposes for support of common school: Provided, that the aforesaid annual rate for school purposes may be increased by any school district by an amount not to exceed ten mills on the dollar valuation, on condition that a majority of the voters thereof voting at an election, vote for said increase." Okla. Const. Art. X, Sec. 9.

The court held that this provision as supplemented by the statutes extended in force in the state upon its admission to the Union was self-executing. The controlling statutory provision involved provided that the inhabitants qualified to vote at a school meeting shall have the power "To vote annually a tax not exceeding two per cent. on all the taxable property in the district, . . ." With regard to this provision the court said:

> "The foregoing statutory provision, in so far as it authorizes an annual levy of 20 mills, is in violation of section 9, art. 10, of the Constitution, in that under that section the maximum that may be levied in any one year is 15 mills, but in so far as the statute provides the manner of levy and by whom it shall be made, it is in no wise in conflict with the Constitution. By that statute the people are authorized by vote at a meeting of the district lawfully assembled to levy directly such tax as they deem necessary and sufficient for the various school purposes for any current year. They are authorized by this section to levy by their vote at such meetings not only the first five mills, but all other amounts that may be levied for the district."

The court reached this decision on the basis of the following interpretation of the above quoted constitutional provision:

> "It will be observed that that portion of the section providing for a school district levy for the support of common schools may be separated in two parts, the

first of which authorizes a levy for a district of not more than five mills on the dollar each year. The section is silent as to how this tax may or shall be levied. No attempt is made to define the procedure for its levy, by·whom it shall be levied, or when it shall be levied. It authorizes unqualifiedly, without restrictions or limitation so far as the Constitution attempts to regulate it, a levy for school district purposes not more than five mills on the dollar. . . . The legislative intent was to authorize first a levy of a tax not to exceed five mills, leaving it to the Legislature to prescribe the manner, time, and by what authority this levy shall be made; but when a levy is to exceed five mills, which is authorized by the second part of the section, then there is placed upon the authority to levy such additional amount the constitutional restraint that it shall not be levied except with the approval of a majority of the voters of the district voting at an election thereon. The additional amount that may be levied under the limitation and restrictions of the second part of the section is ten mills, instead of five mills; and the limitation as to the manner of such levy, which does not occur as to the.five mills authorized by the proceding clause, is that it must receive the sanction of a majority of the voters of the district voting at the election, whereas the first five mills may be levied with or without such sanction of the voters as the Legislature may provide. We cannot concur in the construction contended for that it was intended to require that the first five mills should be levied by the school district board. No such intention finds specific expression in the section; nor do we think that the same exists by implication. . . . All that was intended by these provisions as to the school district tax was that in no event should there be a tax levied for any year in excess of fifteen mills. The first five mills of which may be levied by such authority and under such procedure as the Legislature may from time to time prescribe, and the additional ten mills may be levied in like manner except that such levy shall never be made without the approval of the people of the district as prescribed in the second clause of the section."

The court also pointed out that at a special session of the Legislature in 1910 (subsequent to the levy involved in the case) an act was passed by which a different procedure was prescribed for the levy of the first five mills authorized by the Constitution. Under the terms of the 1910 act it became the duty of the county excise board, upon the estimates received from a school district to levy a tax (not exceeding five mills on the dollar) for the support of

the common schools of such district. At page 948 of the opinion the court said:

"If there is any doubt as to whether the legislative department in passing the act of 1908 placed upon section 9, art. 10 of the Constitution, the construction we have here given it, an examination of the act of 1910 will remove such doubt; for, it is clear that the legislative interpretation of this provision in the last act was that as to the first five mills, authorized to be levied for school district purposes, the Legislature has power, without any limitations by reason of said section, to designate by whom and under what procedure the same shall be levied, and may do so likewise as to all amounts in excess of said five mills authorized to be levied by that section, except such levy must be made by a majority of the voters of the district; and, what was intended to be accomplished by the last act as to school districts not in cities of the first class, was to change the method and procedure of levying the school district tax within five mills from the method prescribed under the law extended in force in the state to that prescribed by said act. It is true that legislative construction of constitutional provisions is not binding upon the courts, when called upon to construe such provisions; but the construction given to this provision of the Constitution by the legislative department is in harmony with our views, and we think it is the correct one."

We have heretofore pointed out that a method or procedure for levying taxes which allows the voters to participate in the levy of the tax is not unusual in Texas. Neither is it unusual in other jurisdictions. It is well established as a proper and reasonable means of local determination as to the need and uses of authorized local taxes. Cooley on Taxation (4th Ed. 1924) Vol. 3, Sec. 1019, pp. 2062-2063.

We have referred to the custom and reasonableness of the voting procedure as added evidence that it was not intended by the Legislature as a limitation on the special taxing power authorized by the constitutional amendment. Had the Legislature provided an unreasonable or obviously impossible method of levy, such as a unanimous vote of the property taxpaying voters, we would be confronted with an entirely different question. We do not pass on that question because it is not here presented.

For the foregoing reasons we are of the opinion that Sections 7-9 of H.B. 107, 51st Legislature, are valid.

## SUMMARY

The provisions of H.B. 107, Acts 51st Leg., R.S. 1949, ch. 414, p. 852 (Art. 7048a, V.C.S.), which require a local election to determine if and when the 30 cent per $100.00 valuation county tax authorized by the amendment to Section 1-a of Article VIII of the Texas Constitution shall be levied, are valid. In the absence of a conflicting constitutional direction as to the method for levying the tax, the Legislature has the authority to provide by law any reasonable mode of procedure, including the mode which allows the qualified property tax paying voters of the county to participate in the levy of the tax.

Yours very truly,

PRICE DANIEL
Attorney General

By *Marietta McGregor Creel*
Mrs. Marietta McGregor Creel
Assistant

APPROVED:

Chas. D. Mathews
Executive Assistant

Joe R. Greenhill
First Assistant

Price Daniel
Attorney General

MMC/mwb