## Ex Parte Julia A. Coombs, alias Maud Shirley.

### No. 263. Decided February 23, 1898.

**1. Constitutional Law—County and Justice Court—Jurisdiction.**

The original concurrent jurisdiction of county courts and courts of justices of the peace in misdemeanors punishable by fine, as the same was provided in the Constitution of 1876, was not altered or changed by the amendment to the Constitution adopted in 1891.

**2. Constitutional Provision—How Construed.**

In the construction of a Constitution, it is presumed that the language in which it was written was carefully selected and made to express the will of the people, and that in adopting it they intended to give effect to every one of its provisions. Where the meaning of a provision may be in doubt and uncertainty, recourse may be had to extraneous matters and the history of the instrument itself, or those particular portions of it under investigation may be considered.

**3. Same—Judicial System—Corporation Courts.**

Corporation courts in the State of Texas have never been a part of our judicial system, except by virtue of express constitutional provisions. Such express provisions were contained in the Constitutions of 1845, 1861, and 1866, but they were omitted from the Constitutions of 1869, 1876, and the amendment of 1891; and since 1869 corporation courts have ceased to exist as a part of our judicial system, and such courts have thus been left with such jurisdiction only as might pertain to them as incidents to municipal charters. Those constitutional omissions also withdrew from the Legislature all authority to confer upon such courts jurisdiction of the general laws of the State.

**4. Municipal Ordinances—Re-enacting Offenses—Against the General Law.**

Since the Legislature can not confer jurisdiction upon city courts to try violations of State laws nor grant municipal corporations authority to suspend State laws, it follows that city councils can not pass ordinances covering the same acts, which are made criminal offenses against the State.

**5. Construction of Constitutional Provision.**

By section 1, article 5, of the Constitution, as amended in 1891, it is provided, that "the judicial power of this State shall be vested in one Supreme Court, in Courts of Civil Appeals, in Courts of Criminal Appeals, in district courts, in county courts, in commissioners courts, in courts of justices of the peace, and in such other courts as may be provided by law." Held, the Legislature, under the guise of creating "other courts," can not change the organization of the judicial system, and divest the district court or the justices of the peace courts of their constitutional jurisdiction. The judicial power has been distributed by the organic law, and is beyond legislative control. The Legislature can not confer exclusive jurisdiction upon a court of its own creation to the exclusion of a constitutional court.

**6. Corporation Courts—Their Jurisdiction.**

Corporation courts can not be invested with jurisdiction exclusive of or concurrent with State courts to try violations of the penal laws. The Legislature can not invest municipal corporations with power to suspend penal laws within the limits of the corporation. In this State corporation courts are only authorized as incidental to, and can only be brought into existence under, municipal charters. They can not be

created under article 5 of the present Constitution. They can not form part of the judicial power of the State, but are only incidental to corporate charters under the provisions of article 11 of the Constitution.

OPINION OF HENDERSON, J.

**7. Corporation Courts—Jurisdiction.**

Corporation courts are mere incidents of municipal government for the enforcement of municipal laws. Their jurisdiction and functions are coextensive with the town or city, and pertain to offenses against the municipal government whch are made such by ordinances passed for that purpose. The Legislature may create such courts, and under the provisions of former Constitutions they were part of our judicial system, and the Legislature, by articles 98, 929, and 930, Code of Criminal Procedure, conferred upon mayors and recorders the same jurisdiction to try State cases as justices of the peace.

**8. Statutory Law—Repeal of.**

By omission of former provisions the Constitution of 1869, and all subsequent Constitutions, repealed the previous constitutional provisions making mayors and recorders' courts part of our judicial system, and consequently articles 98, 929, and 930, Code of Criminal Procedure, being without constitutional authority to support them, are also repealed, notwithstanding they have been brought forward from time to time by the codifiers of our statutory revisions.

**9. Corporation Courts—Municipal Ordinances—Re-enactment of Statutory Law.**

Corporation courts are not part of our State judicial system, and a city or town has no right to pass an ordinance making that an offense against the city which has been declared an offense against the State.

**10. Same—Legislative Power to Create New Judicial Officers.**

When the Constitution, as the source of judicial power, vests that power in designated tribunals, the Legislature can neither vest it elsewhere, nor create new judicial officers, nor divide the duties of the judicial office designated by the Constitution, and assign the same to two or more officers under different names. It can not create mayors' and recorders' courts with co-ordinate jurisdiction with the county court; nor can it create mayors' or recorders' courts directly or indirectly justices of the peace courts and confer upon them jurisdiction appertaining to such courts. If the Legislature has the authority at all to bring municipal courts into our judicial system to do double service, both as municipal and State courts, it must be done by creative act, and not by merely conferring jurisdiction as upon State courts.

**11. Same—Disorderly House.**

The city court of Dallas has no jurisdiction to try the offense of keeping a disorderly house, neither as an existing State court, under our Constitution, nor as a State court created by the Legislature.

Appeal from the County Court of Dallas. Tried below before Hon. T. F. Nash, County Judge.

Appeal from a conviction for keeping a disorderly house; penalty, a fine of $200.

The opinion states the case in so far as the question upon which the appeal was determined is concerned.

*Stillwell H. Russell,* for appellant.

*A. P. Wozencraft* and *T. A. Work,* attorneys for the city of Dallas.

*W. E. Hawkins,* Assistant County Attorney, *R. L. Henry,* and *Mann Trice,* Assistant Attorneys-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted in the County Court of Dallas County, under an indictment charging her with keeping a disorderly house, her punishment being assessed at a fine of $200; hence this appeal.

When the case was called for trial, she filed a plea to the jurisdiction, alleging, in substance, that the County Court could not exercise concurrent original jurisdiction with the justice of the peace over said offense, and that said County Court could only exercise jurisdiction in such cases when appealed from said justice's court. It was also asserted in said plea that the city court of Dallas had jurisdiction over houses of prostitution, to the exclusion of the State courts; and, if it did not, then its jurisdiction was concurrent with that of the justice of the peace.

With reference to the first proposition, the question has been settled adversely to the appellant, and we do not care to further discuss it. See Woodward v. State, 5 Texas Crim. App., 296; Jennings v. State, Id., 298; Solon v. State, Id., 301; Leatherwood v. State, 6 Texas Crim. App., 244; Chaplin v. State, 7 Texas Crim. App., 87; Ballew v. State, 26 Texas Crim. App., 483. These decisions construe the provisions of the Constitution of 1876 with reference to the concurrent original jurisdiction of county and justices of the peace courts in finable misdemeanors. The amended Constitution of 1891 did not alter or change this jurisdiction.

The remaining questions suggested by said plea to the jurisdiction, with reference to the authority of the Legislature to confer jurisdiction upon municipal courts, exclusive of or concurrent with the State courts, over violations of State laws, will be treated in a general way, without taking up said propositions separately.

The city charter of Dallas, in force at the time of the trial of this case in the court below, provides as follows (section 25): "The judicial power of the city of Dallas shall be, and the same is hereby vested in a court to be known as the 'Dallas City Court,' to be presided over by a judge, to be known as the 'City Judge'; which court is hereby created and established with criminal jurisdiction as follows: To hear, determine, and punish all misdemeanors over which the recorder's court of Dallas now has jurisdiction; to try, hear and determine and punish all misdemeanors arising under the provisions of this charter; to have concurrent jurisdiction with State courts over all misdemeanors against the State laws, committed within the city limits, except theft, swindling, aggravated assaults and aggravated assaults and batteries; keeping or exhibiting such games as are prohibited by law, and those involving official misconduct; and to have exclusive jurisdiction over disorderly houses and female vagrants." In Leach's Case, 36 Texas Criminal Reports, 248, we held that the Legislature did not have authority to confer jurisdiction upon city courts to try violations of the Penal Code of the State. The same proposition was reaffirmed in Ex Parte Knox (Texas Criminal Appeals), 39 Southwestern Reporter, 670; and in the latter case it was further held that the Legislature had no authority to confer upon corporation

courts ex officio jurisdiction as justices of the peace. Since the rendition of those decisions, our Supreme Court seems to have taken a different view of the matter, and arrived at a different conclusion. It is to be. regretted that courts of last resort, whose adjudications are final in matters coming before them, should disagree as to what the law is, or should be, in the same character of cases or upon the same legal propositions. Were this a matter of personal discretion instead of one of high public duty, we might perhaps be justified in yielding our views; but, under our Constitution, this court was created with final appellate jurisdiction in all criminal appeals; hence we can not, if we felt inclined to do so, shirk the responsibility imposed by the Constitution and laws of this State. In the consideration of a Constitution, our Supreme Court said, in Mellinger v. City of Houston, 68 Texas, 44: "In the construction of a Constitution, it is to be presumed that the language in which it was written was carefully selected, and made to express the will of the people, and that in adopting it they intended to give effect to every one of its provisions." See also Gibbons v. Ogden, 9 Wheat., 188. The general proposition is well settled that, in creating the Constitution, words were carefully used to convey the meaning of its framers. Where that language is plain and unambiguous, that meaning should be given to the words which the words themselves import, without recourse to extrinsic matters. But should such meaning and intent be involved in doubt, or there should be uncertainty about it, then recourse may be had to extraneous matters. And in this connection the history of the Constitution itself, or those particular portions of it under investigation, may be taken into consideration. Every Constitution has a history of its own, and ours is not an exception to this rule. Chief Justice Cooley said, in People v. Harding, 53 Mich., 485, 19 N. W. Rep., 156: "Every constitution has a history of its own, which is likely to be more or less peculiar, and, unless interpreted in the light of this history, is liable to express purposes which were never within the minds of the people when agreeing to it. This the court must keep in mind when called upon to interpret it; for it is their duty to enforce the law which the people have made, not some other law, which the words of the Constitution may possibly be made to express." This rule applies with peculiar cogency to amended Constitutions, or at least to the particular portions of such Constitutions which may have been amended. In his work on Constitutional Limitations (page 75), Judge Cooley uses this language: "When a Constitution is revised or amended, the new provisions come into operation at the same moment that those they take the place of cease to be in force; and if the new instrument re-enacts, in the same words, provisions which it supersedes, it is a reasonable presumption that the purpose was not to change the law in these particulars, but to continue it in uninterrupted operation. This is the rule in the case of statutes, and it sometimes becomes important where the rights had accrued before the amendment or revision took place. Its application to cases of an amended or revised Constitution would seem to be

unquestionable." This doctrine was fully concurred in by our Supreme Court in Muench v. Oppenheimer, 86 Texas, 568, and the rule was there indorsed that the interpretation of a Constitution in this respect would be the same as that of statutory law. The authorities upon this proposition might be amplified indefinitely, but we deem it unnecessary.

Referring to the various Constitutions of Texas with reference to our judicial system, we find that the Constitution of the Republic of Texas, made in 1836 (article 4, section 1), provides: "The judicial power of the government shall be vested in one Supreme Court, and such inferior courts as the Congress may from time to time ordain and establish." Section 10 provided: "There shall be in each county, county courts, and such justices of the peace as the congress may from time to time establish." Section 12 provided: "There shall be appointed for each county a convenient number of justices of the peace," etc. Section 13 provided: "The Congress shall as early as practicable introduce by statute the common law of England with such modifications as our circumstances in their judgment may require; and in all criminal cases, the common law shall be the rule of decision." It will be observed that this Constitution marked out a judicial system, and did not grant power to Congress to confer jurisdiction of violations of general laws upon the judicial officers of municipal corporations. In this connection it may be stated that in England the authority of municipal corporations to make by-laws did "not extend to acts criminal in their nature, and which are punishable by criminal statutes in force throughout the realm." 1 Dill. Mun. Corp., sec. 426. So, it would seem that the framers of the Constitution of the Republic of Texas did not intend to authorize congress to confer such jurisdiction upon municipal corporations. In fact, the entire Constitution is silent upon the question of municipal courts or corporations. The above remarks are based upon the theory that the Congress of the Republic of Texas had the inherent power to create municipal corporations, and grant them charters, if such existed at common law. This may be taken, then, as an expression of the will of the framers of said Constitution that violations of the penal laws of the Republic should not be tried in municipal courts.

Looking to the provisions of the Constitution of 1845, we find that article 4, section 1, provides: "The judicial power in this State shall be vested in one Supreme Court, in district courts, and in such inferior courts as the Legislature may from time to time ordain and establish, and such jurisdiction may be vested in corporation courts as may be deemed necessary and be directed by law." Article 4, section 13, provides: "There shall be appointed in each county a convenient number of justices of the peace, who shall hold their offices for two years," etc. Now, it is apparent that said section 1 of article 4, above quoted, authorizes the Legislature to confer jurisdiction upon corporation courts within the terms and meaning of said Constitution, and that, under section 13, discretion was lodged with the Legislature to provide a convenient number of justices of the peace, without fixing the limit or providing the

exact number. We find the same language used in the Constitution of 1861, in article 4, section 1, of said instrument; and the same is true as to justices of the peace.

In the amended Constitution of 1866 (article 4, section 1) it was provided: "The judicial power of this State shall be vested in one Supreme Court, in district courts, in county courts, and such corporation courts and inferior courts or tribunals as the Legislature may from time to time ordain and establish. The Legislature may establish criminal courts in the principal cities within the State, with such criminal jurisdiction coextensive with the limits of the county wherein said city may be situated, and under such regulations as may be prescribed by law; and the judge thereof may preside over the courts of one or more cities, as the Legislature may direct." Section 19 provided for the election of a convenient number of justices of the peace, who shall have such civil and criminal jurisdiction as shall be provided by law, where the matter in controversy shall not exceed $100, exclusive of interest. Now, we note here that for the first time corporation courts were ingrafted into the judicial power of this State by express constitutional provision. Theretofore the Legislature had only been authorized to confer jurisdiction upon corporation courts. In the Constitution of 1866 they became a part and parcel of the "judicial power" of Texas, and formed a part of its judicial system.

Turning to the Constitution of 1869, we find that article 5, section 1, uses this language: "The judicial power of this State shall be vested in one Supreme Court, in district courts, and in such inferior courts and magistrates as may be created by this Constitution, or by the Legislature under its authority. The Legislature may establish criminal courts in the principal cities within the State, with such criminal jurisdiction coextensive with the limits of the county wherein such city may be situated, and under such regulations as may be prescribed by law. And the judge thereof may preside over the courts of one or more cities as the Legislature may direct." Section 21 provides: "Each county shall be divided into five justice precincts." Compare section 1, article 5, of the Constitution of 1869, with those already quoted, and we find that this provision with reference to corporation courts set forth in the Constitutions of 1845, 1861, and 1866 is omitted. We find now for the first time that the number of justices of the peace has become fixed, definite, and limited to five.

The Constitution of 1876 (article 5, section 1) reads: "The judicial power of this State shall be vested in one Supreme Court, in Court of Appeals, in district courts, in county courts, in commissioners courts, in courts of justices of the peace, and in such other courts as may be established by law. The Legislature may establish criminal district courts, with such jurisdiction as it may prescribe, but no such court shall be established unless the district includes a city containing at least 30,000 inhabitants as ascertained in the census of the United States, or other official census, provided such town or city shall support said crim-

inal district courts when established." It further provided for the continuance of the Criminal District Court of Galveston and Harris Counties. Section 18 of said article ordained that "each county in the State, now or hereafter existing, shall be divided from time to time, for the convenience of the people, into precincts, not less than four nor more than eight." It may be noted here that the authority of the Legislature to create criminal district courts had been limited, except in Galveston and Harris Counties, to counties which contained cities of 30,000 or more inhabitants; and even in that case no such court could be created unless the city would assume the charges incident to such court. And it may be further noted that the system with reference to justices of the peace courts was made elastic, fixing a minimum number, with permission for the Legislature to enlarge that number to eight in each county.

By the amended Constitution of 1891, article 5, section 1, was made to read as follows: "The judicial power of this State shall be vested in one Supreme Court, in courts of civil appeals, in courts of criminal appeals, in district courts, in county courts, in commissioners courts, in courts of justices of the peace, and in such other courts as may be provided by law. The Legislature may establish such other courts as it may deem necessary, and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto." It also provides for the election of, and defines the power and jurisdiction of, justices of the peace, and fixes their number at not less than four nor more than eight, "except in any precinct in which there may be a city of 8000 or more inhabitants, in which there shall be elected two justices of the peace." So, it will be seen that this Constitution, by amendment, made very material changes in the judicial system of the State; and that portion of the system with reference to justices of the peace was made still more elastic than heretofore, by requiring two justices of the peace, in addition to the eight theretofore provided for, in precincts where there is a city of 8000 or more inhabitants.

We have referred to these matters in the various Constitutions, which are deemed illustrative of the history of the matter under investigation, and the effect and changes these amendments may have had upon the authority of the Legislature with reference to our judicial system; we have traced the history of these acts of the framers of the Constitution, and of the people of the State in making these Constitutions—not because we think there is any doubt as to the certainty or accuracy of the opinions of this court in the Leach, Knox, and Fagg Cases (36 Texas Criminal Reports, 248; 39 Southwestern Reporter, 670; ante, p. 573), and the propositions asserted in those cases with reference to the want of power of the Legislature to confer jurisdiction upon corporation courts, but in deference to the opinion of our Supreme Court wherein they have thought it necessary to differ with the views expressed by this court in those opinions. The framers of the Constitution of

1845 appear to have deemed it necessary to ingraft by express provision in that instrument authority upon the Legislature to confer jurisdiction upon corporation courts. We have not had access to the records of the convention which framed the Constitution of 1845 to aid us in this investigation as to why they did ingraft such a provision. But, when we look to the adjudications of our sister States, it may be that the framers of our Constitution of 1845 were induced to insert said clause because of the fact that the law was different in those different States, and at variance with each other, and a diversity of opinion existed in the different States in regard to the authority of the Legislature to confer jurisdiction upon corporation courts over violations of State laws. In some of the States it was held that such corporation courts could not exercise jurisdiction over criminal offenses of a general nature; and in others, that the Legislature could confer jurisdiction upon such courts of violations of the grade of misdemeanors. It may therefore be concluded, with more or less accuracy, that, with these variant decisions and contradictory policies and laws prevailing in the other States, the framers of the Constitution of 1845 thought it better to settle that question by providing against such contingencies in the Constitution itself, and thus set at rest that much vexed question so far as the policy of this State was concerned, and, by so doing, relieve the courts in this State of these much vexed questions. It may be stated with confidence that corporation courts in the State of Texas have not been a part of the judicial system of our State judiciary, except by virtue of express constitutional provisions. By a casual inspection of the provisions of all the Constitutions of the State of Texas, it will be seen that the same language is used with reference to the judicial power of this State, to wit, "The judicial power of this State shall be vested," etc., and that this provision uses the same language with reference to the authority of the Legislature to create inferior courts. And, by an examination of the Constitutions from 1869 on, it will be noticed that corporation courts were omitted from said judicial system. Then, it may be asserted that the jurisdiction conferred upon municipal courts as a part of the judicial power of the State finds its right of existence, as such, in the express provisions in the Constitutions of 1845, 1861, and 1866, and that such right or power was, by omission, abolished by the Constitution of 1869, and has never been incorporated into the judicial system since that time. Being omitted from the Constitutions of 1869, 1876, and 1891, such corporation courts ceased to exist as a part of said judicial power, and this omission indicates an entire change of policy in this State in regard to the attitude of corporation courts. This omission of corporation courts in the re-enactment of the provisions of the Constitution with reference to the judicial power of this State, repealed said courts, and they ceased to exist as a part and parcel of the judicial power of Texas. This being true, it left the jurisdiction attached to such corporation courts only such as might pertain to them as incidents to municipal charters, and withdrew from the Legislature all authority to confer

jurisdiction upon said courts of general laws of this State, and thus, by amendment and substitution, repealed corporation courts as a part of the judicial system of the State. Where provisions of a prior Constitution have been omitted in subsequent amendments, such amendments would operate as a repeal of such omitted provisions; and the same rule would apply here as in the construction of statutes. We are not without authority in this State to support this proposition. Speaking of this matter, our Supreme Court, in Muench v. Oppenheimer, 86 Texas, 568, said: "Section 36 of article 3 provides that 'no law shall be revived or amended by reference to its title; but in such case the act revived or section or sections amended shall be re-enacted and published at length.' Whether this applied to an amendment to the Constitution or not, we need not inquire. It has been the custom of our Legislature to follow this provision in submitting amendments to the Constitution; and we think that the construction should be the same whether the amendment be effected by an entire substitution or by a mere declaration that the law or section named should be amended in one or more particulars. The purpose to keep in force, as continuing the law, the provisions that are not amended, are as clearly evinced in the one case as in the other. Judge Cooley lays down the rule upon this subject in the following language: 'When a Constitution is revised or amended, the new provisions come into operation at the same moment that those they take the place of cease to be in force; and if the new instrument re-enacts, in the same words, provisions which it supersedes, it is a reasonable presumption that the purpose was not to change the law in these particulars, but to continue it in uninterrupted operation. This is the rule in the case of statutes, and it sometimes becomes important where rights had accrued before the amendment or revision took place. Its application to the case of an amended or revised Constitution would seem to be unquestionable.' Cool. Const. Lim., 75. In the propositions thus announced, we fully concur." This opinion was rendered by the present chief justice of our Supreme Court, and in that conclusion the court was unanimous.

It may be asserted with equal confidence that a repeal may be had by amendment and substitution. So, when a subsequent statute reviews the subject matter of a former one, and is evidently intended as a substitute for it, though it contain no express words to that effect, it must be held to operate as a repeal of the former to the extent to which its provisions are revised and supplied. And a new statute which comprehends the entire subject matter of the previous one, and enacts a new and independent system respecting it, repeals and supersedes all prior systems and laws upon the same subject matter. See Stebbins v. State, 22 Texas Crim. App., 32; Rogers v. Watrous, 8 Texas, 63; Goodenow v. Buttrick, 7 Mass., 140; Stirman v. State, 21 Texas, 734; Ex Parte Valasquez, 26 Texas, 178; Holden v. State, 1 Texas Crim. App., 226; Harold v. State, 16 Texas Crim. App., 157; Bartlet v. King, 12 Mass., 545; In re Ashley, 4 Pick., 21, 23; Com. v. Cooley, 10 Pick., 39; Ellis v. Paige,

1 Pick., 43, 45; Inhabitants of Rutland v. Inhabitants of Mendon, Id., 154; Blackburn v. Inhabitants of Walpole, 9 Pick., 97; Suth. Stat. Const., secs. 133, 154, and note, for collated supporting authorities.    Sedg. Stat. Const., p. 19, says: "The general rules of interpretation are the same whether applied to statutes or Constitutions."    The same doctrine is announced in End. Interp. Stats., secs. 506, 517.    See also Stewart v. Kahn, 11 Wall., 493.    That omissions of courts from subsequent Constitutions which have been named in prior Constitutions will operate as a repeal of said courts, is settled in this State, so far as we are aware, by an unbroken line of decisions.    If there is an opposing opinion to this rule, it has escaped our observation.    In Bigby v. City of Tyler, 44 Texas, 351, this rule was followed; so it was in Holmes v. State, Id., 631.    These decisions were rendered under the Constitution of 1869. Under the Constitution of 1866 and those prior thereto, as before stated, corporation courts entered into and became a part of the judicial power of this State in one form or another.    Under the Constitution of 1869, this provision of former Constitutions was repealed.    Section 1 of article 5 of the Constitution of 1869, having taken the place of section 1 of the judiciary article of the previous Constitution, repealed the provisions of said prior Constitution with reference to corporation courts by omitting the same.    By the Act of 1856, which came into operation under the provisions of the Constitution of 1845, authority was granted mayors and recorders the same as justices of the peace.    When the provisions of the Constitutions of 1845, 1861, and 1866 were omitted from the Constitution of 1869, the Supreme Court held that, inasmuch as the Constitution of 1869 had limited the number of justices of the peace in each county to five, therefore mayors and recorders could no longer exercise the judicial authority of justices of the peace; that, by reason of said limitation of the number of said justices of the peace, the Legislature could not create an additional number, either directly or indirectly.    Holmes v. State, 44 Texas, 631.    Again, under the Constitution of 1869 the Legislature was authorized to create certain character of criminal district courts.    This provision was omitted from the Constitution of 1876.    Among the earlier questions submitted to the Court of Appeals was the effect of this omission; and in Long v. State, 1 Texas Criminal Appeals, 709, it was held that, by reason of said omission, said provision was repealed, and said court abrogated, and could no longer form a part of the judicial system of this State.    This rule has been adhered to in an unbroken line of decisions in this State; and in fact, so far as we are aware, this has never been questioned, unless by the case of Harris County v. Stewart, 91 Texas, 133.

In support of the proposition that the provisions of the Constitution of 1869 were repealed by the Constitution of 1876, omitting the criminal district courts referred to, see also Hunt v. State, 7 Texas Crim. App., 212; Doran v. State, Id., 385; McInturf v. State, 20 Texas Crim. App., 335; Muench v. Oppenheimer, 86 Texas, 568.    While all of these

cases do not deal directly with the question of the repeal of said criminal district court by said omission, yet they do deal directly with the principle involved. And to the same effect is Blessing v. City of Galveston, 42 Texas, 641, as we understand that opinion. The latter case asserts, as we understand it, in this respect, two propositions: First, that if the Legislature, by its inherent power, could create a municipal corporation for the purpose of local government, it could also invest it with such powers as are necessary and essential for the purposes of its creation, and therefore it could create a municipal court to adjudicate matters of its own internal municipal policy; and, second, that judicial power of a general character, such as is conferred upon the constitutional tribunals or officers clothed with judicial functions for the general administration of laws, in contradistinction to local or municipal ordinances or regulations, can not be conferred upon mere corporation courts created to enforce the police powers delegated to such corporations. The point at issue in that case was whether, under the charter of Galveston, the city court of that city could entertain jurisdiction of a violation of its legitimate municipal ordinances; and the court held, as we understand that decision, that this jurisdiction could be maintained, but it could not entertain jurisdiction of offenses defined by statute. And when we consider this, with the subsequent decisions of that court in the cases of Holmes and Bigby, above referred to, in 44 Texas, it will be discovered that the main reason for the holding in those cases was that, the Constitution of 1869 having limited the number of justices of the peace in the county, the Legislature could not confer such jurisdiction upon city courts as is exercised by justices of the peace, or confer such jurisdiction upon such corporation courts to act as ex officio justices of the peace. Then, when we look to the provisions of the Act of 1856, we see that the Legislature limited the power of municipal courts to petty offenses of a character of which justices of the peace only had jurisdiction. The conclusion, then, would seem to be inevitable, that, the Constitution of 1869 having repealed the provisions of the former Constitution authorizing the Legislature to confer jurisdiction of State offenses upon municipal courts, these decisions are conclusive that the authority of municipal courts to try violations of the State law was withdrawn, and the Act of 1856 repealed, by reason of the repeal of the provisions of the Constitution in existence prior to 1869 with reference to corporation courts. So, in either event, whether we look at it from the standpoint of the omission of the granted powers to corporation courts in the Constitution of 1869, or by reason of the limitation of the number of justices of the peace in the same Constitution, we will see that the authority to confer on municipal courts jurisdiction of violations of State laws passed out of the judicial system of Texas. Now, when we look to the provisions of the Constitution of 1876, and the amended Constitution of 1891, authority was not granted the Legislature to confer jurisdiction upon municipal courts; nor did any of these Constitutions create said municipal courts a part and parcel "of the judicial

power of this State." In other words, this power was not reinvested in Constitutions subsequent to that of 1869.

Now, with reference to the question of the power of the Legislature to grant authority to municipal corporations under charter to set aside or vacate the statutes of this State, we find the question to be largely in the same condition as that with reference to municipal courts, and that that power can not be exercised, nor does it exist, under our present Constitution. We are aware that there is a decision by the Court of Appeals which holds that the Legislature had that power, to wit, Davis v. State, 2 Texas Criminal Appeals, 425. In that case the charter which was held to authorize the licensing of bawdy houses, and thus set aside the State penal law prohibiting bawdy houses, was created in 1871, under the Constitution of 1869; and this decision may have been correct as the Constitution then stood. In Ex Parte Garza, 28 Texas Criminal Appeals, 381, the authority of the city of San Antonio to license bawdy houses, under its charter, was not sustained. That decision in effect holds that the Legislature might grant, by express authority for that purpose, power to said corporation to license bawdy houses in violation of the State law. If it be conceded that said decision goes to that extent, it was not correct. And in this connection it may be observed that the provision of the Constitution of 1876 with reference to the constitutional inhibition of suspending laws in this State was not called to the attention of the court, nor was that phase of the law discussed.

Now, with reference to the power of the Legislature to delegate authority to suspend laws in this State, we find the history of the matter, as shown by the various Constitutions, to be as follows: The Constitutions of 1845, 1861, 1866, and 1869 (section 20 of article 1 of each) provided: "No power of suspending the laws in this State shall be exercised, except by the Legislature or its authority." Hence it will be seen by these provisions that the suspension of laws in this State could be exercised by the Legislature "or its authority." By the terms of section 28 of article 1 of the present Constitution, this was changed, and said section amended so as to read as follows: "No power of suspending laws in this State, shall be exercised, except by the Legislature," omitting the expression in the former Constitutions "or its authority." By such omission the authority of the Legislature to delegate its power to suspend laws was repealed, and that body was inhibited from delegating authority to suspend laws in whole or in part. If, under former Constitutions, the Legislature could delegate authority to municipal corporations to suspend articles of the Penal Code, it would hardly be denied that such authority was withdrawn by not carrying the provision "or its authority" forward in our present Constitution. The fact that the Legislature may have sought to confer authority, under municipal charters, to suspend the general laws of this State, within corporate territory, does not accumulate strength or become correct by reason of the lapse of time in which they may have sought to so exercise

that authority; the Constitution inhibiting such delegation of power. In Titus v. Latimer, 5 Texas, 433, the Supreme Court, speaking of this phase of legislative action, says: "If, however, they are repugnant to the Constitution, and could not give jurisdiction, neither the lapse of time nor the practice of the court can vindicate the exercise of such jurisdiction." Cool. Const. Lim., 4 ed., p. 85. Whenever and wherever that rule has come pointedly before the courts in this State for adjudication, it has been adhered to with peculiar tenacity. This is the same rule we have heretofore discussed in regard to the abrogation of courts by omitting them from subsequent Constitutions, and the authorities there cited are in point upon this proposition, and we again refer to them.

If the Legislature can not confer jurisdiction upon city courts to try violations of State laws, and can not grant municipal corporations authority to suspend State laws, it would follow that city councils can not pass ordinances covering the same acts which are made criminal offenses against the State. See Ex Parte Fagg, ante, p. 573. The Legislature can not do indirectly what it can not do directly; for, if they can authorize the city council to pass an ordinance suspending, within its corporate jurisdiction, one State law, it would follow that this power could be conferred to thus suspend all such laws; and if the Legislature can confer jurisdiction upon the city court to try one violation of the Penal Code, either to the exclusion of the State courts or concurrently with such courts, then it would follow that this could be done with respect to all violations of State laws. The corporation could as well pass an ordinance suspending the State law in regard to murder, treason, arson, rape, or robbery as it could with reference to carrying arms, prohibiting bawdy houses, or any other misdemeanor. There is no Constitutional inhibition applying to one that does not with equal certainty apply to all of said laws. If the corporation courts form a part of the "judicial power of this State," under section 1 of article 5 of the amended Constitution of 1891, the Legislature would be authorized to confer the same jurisdiction upon said corporation courts as the Constitution confers upon district courts, county courts, or justices of the peace courts.

Now, it may be asked, what was the intention, object, and purpose of the people of this State in formulating the amended Constitution of 1891? In Harris County v. Stewart, 91 Texas, 133, Judge Brown, speaking for the court, and of section 1 of article 5 of said Constitution of 1891, says: "The language 'and such other courts as may be established by law' was nullified by the decisions of the Supreme Court in the cases mentioned. The courts and lawyers were in constant trouble as to the jurisdiction of courts, which greatly embarrassed the administration of justice. In fact, there were some subjects of which no court had jurisdiction." We do not so understand the object of the amendment to section 1 of article 5 of the Constitution. Under said section, jurisdiction was not conferred upon the

district and other courts. It simply enumerates courts, and does not attempt to confer jurisdiction upon them. Section 3 of said article 5, as amended, provides for the jurisdiction of the Supreme Court. Section 5 prescribes the jurisdiction of the Court of Criminal Appeals, and section 6, that of the Courts of Civil Appeals. So, section 1 of said article, then, does not undertake to confer jurisdiction. If we understand the object and purpose of said amendments, they are to some extent at variance with the views expressed in Harris County v. Stewart, supra. Section 8 of said amended article enlarges the jurisdiction of the district court in regard to certain matters wherein the Supreme Court has held under the Constitution of 1876 that district courts had no jurisdiction, particularly in regard to contests for office and contests over the removal of county seats. In the amended Constitution said court was made one of general jurisdiction, and without regard to the character of the litigation, to avoid the very limitation held to exist by the Supreme Court. Theretofore the jurisdiction of said court had in these respects been limited. There were other objects to be attained by this amendment. It was said in Muench v. Oppenheimer, supra: "The main purpose was to remodel our appeal system so as to relieve the dockets of the Court of Appeals and the Supreme Court, and to secure a prompt disposition of cases on appeal. Incidentally, the jurisdiction of the district court was enlarged, but that of the county court was in no respect changed. That provision which authorized the Legislature to take away the jurisdiction of county courts, and to confer it upon district courts, as we have seen, was left unaffected in any manner by the amendment. It is evident that it was not the purpose to change the former policy in this particular, and it was not intended to abolish all previous legislation which had been enacted under the authority of that provision—a result which would have subserved no useful end, but which would have led to great inconvenience, as well as unnecessary confusion and delay in many pending cases." It may be added that it was also the purpose of said amendment to change the appellate jurisdiction of the Supreme Court, and to create Courts of Civil Appeals, as appellate tribunals in civil cases. Theretofore the appellate jurisdiction of the Supreme Court extended to district courts in civil causes, but since the amendment the appellate jurisdiction of that court only extends by writ of error to the Courts of Civil Appeals, and thus the appellate jurisdiction of the Supreme Court is limited. No one would contend for a moment that an appeal would lie from the district court to the Supreme Court under the present Constitution. This renders certain that its former appellate jurisdiction was repealed by the amended Constitution. Another purpose of the amendment was to abolish the Court of Appeals. It would hardly be maintained now that such a court as the "court of appeals" has an existence in Texas, or that one could be created by legislative enactment. That court was repealed by the amended Constitution of 1891, as were corporation courts by the Constitution of 1869. Another object of the amendment

of 1891 was to create the present Court of Criminal Appeals, with juris-
diction only of appeals in criminal cases.   Before the amendment the
Court of Appeals had appellate jurisdiction as well in civil as in crim-
inal cases.   The Legislature now certainly would not have authority .
to confer jurisdiction upon the Court of Criminal Appeals to entertain
appeals in civil cases.   But in Harris County v. Stewart, supra, it is
said, as to this provision of article 5, section 1, that "the Legislature
may establish such other courts as it may deem necessary and prescribe
the jurisdiction and organization thereof, and may conform the juris-
diction of the district and other inferior courts thereto," changed the
whole system with reference to the power ·of the Legislature to create
other courts; and thus enabled that body to confer upon them such
jurisdiction as it saw proper, coextensive with the named constitutional
courts, and conform the jurisdiction of these respective courts to each
other.   If there is any force in this contention, it applies, as we have
heretofore seen, only to the creation of State courts; and that it could
not change the jurisdiction of the district court is evident from the fact
that one of the principal reasons for amending the present Constitution
was to make that court one of unlimited general jurisdiction as a trial
court, except as to those matters which were reserved to inferior courts.
These added powers were placed within the jurisdiction of the district
court, to avoid the limitation placed upon its jurisdiction in the Con-
stitution of 1876.   This idea is further borne out by the fact that the
county court is the only trial court mentioned in article 5 of the Con-
stitution, whose jurisdiction is authorized to be changed by the Legis-
lature.   If it be conceded that, under the latter clause of section 1 of
article 5 of the present Constitution, the Legislature may create other
courts and adjust the jurisdiction of inferior courts thereto, it does
not follow, nor do we believe it a sound proposition in the face of
what has been said, that the Legislature can deprive the district court
of its general powers conferred upon it by section 8 of the Constitution.
This does not militate against the idea that, under said article or sec-
tion, the Legislature may create such other courts as are not named in
the Constitution, in the nature of assistant or adjunct courts to assist
in the disposition of the litigation in this State, especially in regard to
criminal cases.   That this may be done does not authorize the Legisla-
ture to divest the district court of its constitutional authority.   See
Ex 'Parte Towles, 48 Texas, 413; Ex Parte Ginnochio, 30 Texas Crim.
App., 584, and authorities there cited; State v. Noble (Ind. Sup.), 21 N.
E. Rep., 245.   We would call especial attention to the last case cited.   It
deals with the subject under discussion in the most forcible manner,
and, we believe, with unanswerable reasoning.

·. In connection with the proposition that the Constitution did not
intend to revive the authority of municipal courts as a part of the judicial
power of this State, we would revert to the terms of the amended Con-
stitution of 1891 for a moment.   In that instrument the number of
justices of the peace are increased, so that in cities or towns of 8000

inhabitants or more it is required "there shall be two justices of the peace." This is evidence of the policy and intent of the framers of that instrument to provide a sufficient number of justices for the trans- action of all litigation of a general nature in said cities, without re- course to city courts, and without conferring upon such courts such jurisdiction as is exercised by State courts. This would seem also to indicate that the framers of the amended Constitution of 1891 had in mind the same idea that pervaded the minds of the framers of the Con- stitution of 1869 when corporation courts were omitted from that in- strument, and were following the construction placed upon the same by the Supreme Court in the Bigby and Holmes Cases, supra, and that .it was intended thereby to keep the city courts eliminated from the "judicial power of this State." There is no purpose manifested any- where in article 5 to reinvest corporation courts with judicial authority, or to constitute them a part of the judicial system of our State. On the contrary, it seems to have been the intention of the framers of all the Constitutions from 1869 to 1891, inclusive, to prevent the Legis- lature from conferring jurisdiction upon such corporation courts to try violations of the Penal Code. Wherever the Constitution vests judicial power, it must so remain, and the Legislature has no right to invade it .or suspend it, unless express authority is given in that instrument. The Legislature has no authority to change the organization of the judicial system, nor can that body, under the guise of creating "other courts," devest the district court or the justices of the peace courts of their constitutional jurisdiction. It is true, the Legislature may estab- lish such other courts; but this has been so under all the Constitutions in the State of Texas, since 1845, but at no time has it ever been held that the Legislature could destroy constitutional courts under and by virtue of this general authority to create "such other courts," unless we find such a decision in Harris County v. Stewart, supra. The judicial power has been distributed by the organic law, and is beyond legislative control. Article 2 of the Constitution has expressly provided that our government shall consist of three departments—the executive, the judi- cial, and the legislative; and it is further provided therein that neither of the departments shall invade the prerogatives of the others; and neither the courts themselves, nor the executive, nor the Legislature, have authority to devest themselves of the high trusts and prerogatives and duties imposed by the Constitution. The courts are as much bound to maintain their jurisdiction and power as they are to maintain the authority of the co-ordinate branches of the government, and to protect its authority from invasion from the other two, as it is to protect the executive from the legislative, and the legislative from the executive. The bounds of the authority of each co-ordinate department of the gov- ernment has been set and fixed by the terms of the Constitution, and, as they are there written, they must be maintained. If the Legislature can confer exclusive jurisdiction upon a court of its own creation, to the exclusion of the constitutional court, then that would be but an

indirect means of abolishing the court itself, because it could, by devesting the constitutional court of its power at one time or another, leave it without any jurisdiction whatever; and, while it might not abolish the court in name, it would do so in fact. So, if the Legislature has the power to confer the jurisdiction of the district court upon some other tribunal, then it follows that it can not only emasculate, but actually destroy, said court, as well as the judicial system itself.

In Whitener v. Belknap, 89 Texas, 273, the Supreme Court seem to have taken this view of the matter. In that case the Supreme Court held unconstitutional and void the Act of the Twenty-fourth Legislature wherein it sought to create a civil and criminal court, and prescribe its jurisdiction and organization, and conform its jurisdiction to other courts. Said act conferred upon said civil and criminal court "all the jurisdiction, power and authority in both civil and criminal cases which is now or may hereafter be vested by the Constitution and laws of this State in the district courts of this State, except such jurisdiction, power, and authority as are specially withheld from said court by this chapter," etc. And it further gives it exclusive original jurisdiction of all criminal cases, both felonies and misdemeanors, where the offense was committed in Bowie County, over which justices of the peace have not jurisdiction, etc. The Supreme Court in this connection uses this language: "Thus, all of the jurisdiction which might have been conferred under the Constitution upon the District Court of Bowie County, except in probate matters, has been conferred upon this court; and all of the jurisdiction of the county court, except in probate matters, has likewise been conferred upon it. It also provides that it should have and exercise all jurisdiction thereafter conferred upon district courts by the Constitution or law." It also provides that the district judge of the Fifth Judicial District should preside over said court, and other provisions which are unnecessary to notice. Our Supreme Court held that this act was unconstitutional, and, of course, invalidated it by their decision. They reached this conclusion by first holding that said court was a district court, and then nullified the act creating it under that provision of the Constitution which provided that the district court should be held at no point in the county other than the county seat. Now, if this rule be correct, we do not understand how it would harmonize with the ruling in Harris County v. Stewart; for if the Legislature, as asserted in Harris County v. Stewart, has all authority to create courts, and confer jurisdiction upon them not inhibited by the Constitution, then the Legislature would have the right to confer jurisdiction coextensive with the district court upon municipal courts, if said Constitution does not prohibit it. That seems to be the main proposition in Harris County v. Stewart. Now, if the Legislature could not confer jurisdiction coextensive with the district court upon a mayor's court, outside the limits of municipal corporation territory, wherein is situated the county seat, then there seems to be an inhibition somewhere in the Constitution which does control this question. This inhibition has not been pointed

out in Harris County v. Stewart. If the Legislature has the authority to confer jurisdiction upon municipal corporations, coextensive with the district or county or justice courts, then, under Whitener v. Belknap, that matter will be controlled by the territorial location of the mayor's court, and not by its jurisdiction; that is, the power to create such court would exist only within municipal corporations constituting county seats. It could hardly be held that the Legislature could not create a district court to sit at any point in the county outside of the county seat, and yet confer upon a municipal court the same jurisdiction, and maintain it in said court, when it was located at another point than the county seat. As we understand Harris County v. Stewart, the Supreme Court held the Legislature can confer jurisdiction upon corporation courts, such as it deems proper, not to exceed that of the district court, because there is no constitutional inhibition. If so, then it would follow that such jurisdiction can be conferred on all of said corporation courts wherever situated, because the Constitution makes no difference as to its locality. Then we would find, by comparing the two cases of Harris County v. Stewart and Whitener v. Belknap, supra, that the Legislature could confer jurisdiction on the corporation court coextensive with that of the district court wherever situated, and at the same time could not confer jurisdiction upon a district court situated at any other point of the county than the county seat. This court said in the Leach case, supra, "that, if the Legislature may delegate authority to one municipal court in one town to enforce the general laws of the State, it may do so in every town; and, if it can confer authority upon said courts to take jurisdiction of a misdemeanor, then it may do so as to all these classes of offenses; if as to misdemeanors, then the reasoning would be equally as cogent that it could do so as to all felonies, for there is no constitutional objection in the way of one class of offense that does not obtain as to all classes of offenses. If this power can be delegated to a municipal court in matters pertaining to criminal cases, then it can be so delegated with equal propriety to all cases of civil actions; and we should have the anomalous condition of a municipal court exercising concurrent original jurisdiction in civil and criminal cases throughout the State at the same time with district courts, county courts, and justice courts, and also at the same time could be made to exercise appellate jurisdiction coextensive with the district and county courts. Hence such jurisdiction would be original with district, county and justice courts, and at the same time appellate, without conforming the jurisdiction of the constitutional courts with that conferred upon the municipal courts." This was quoted in the case of Harris County v. Stewart, supra, and thus criticised: "This argument implies an apprehension that the Legislature might abuse the power to create other courts, and especially to combine the administration of the general laws of the State and the local laws of a municipal government in one court to such an extent as to greatly imperil or destroy the judicial system of the State." And it is met in the same opinion with this argument:

"It may be said that, pursuing this course of reasoning to an extreme, a jurisdiction might be thus created treading so closely on the heels of the courts of session and common pleas as to render difficult to distinguish their footsteps; but so long as there is a jurisdiction possessing a controlling power over it, the judges of which are appointed in the manner prescribed by the Constitution, the citizen has all the security which is deemed necessary, and which is provided by the Constitution," etc. In this connection the constitutional appellate jurisdiction of this court is cited as being coextensive with the limits of Texas, as a corrective of this contemplated abuse by the Legislature. If it be a fact that the evils deprecated in that opinion can be avoided by reason of the fact that this court has appellate jurisdiction coextensive with the limits of Texas, then the very emergency mentioned had arisen in the Fort Worth city charter, which was under consideration in the Leach case, because the Legislature had limited the right of appeal from the city court of Fort Worth to this court, and had deprived this court of the very appellate jurisdiction which that case (Harris County v. Stewart) asserts the Constitution gives it, and which the Constitution did in fact give it; and here was the act of the Legislature seeking to deprive the right of the citizen to appeal to this court, or any court where the fine imposed was $20 or less, and had sought to infringe, not only the right of appeal from such conviction, but had sought further to deprive this court of such appellate jurisdiction. So, the very emergency spoken of in that opinion as prospective in the mind of this court had become a realization and a fact under the act of the Legislature granting the charter to the city of Fort Worth; for if that act was constitutional, and the Legislature had the right to limit the right of appeal in said charter, then, so far as that limitation to an appeal is concerned, this court ceased to exercise its appellate jurisdiction. In that connection the following language is also found in Harris County v. Stewart: "If the people choose to trust the Legislature with power to enlarge the judicial system in this State, or to destroy it, the courts can not interfere on the ground that such authority might be carried to an extreme, which would be destructive of the system itself." This, to our minds, is carrying that doctrine too far. It had just been announced in that decision that the Constitution had conferred appellate jurisdiction upon this court coextensive with the limits of the State, and no injury could result; and now the proposition is asserted that the Legislature may destroy the power of this court, and this court would be powerless, under the act of the Legislature, to exercise its constitutional appellate jurisdiction. We do not believe that any authority can be found to sustain such proposition. As before stated, the powers of this government are divided into three departments—the executive, judicial, and legislative; and, by express command of the Constitution, each of these departments is prohibited from in any manner invading the powers, duties, and obligations of the other departments; and the Legislature has no more authority to curtail the jurisdiction of this court or the Supreme Court than said courts have to abolish

the office of governor. And the same court, in Whitener v. Belknap, supra, held the reverse of the proposition in Harris County v. Stewart, because there it was held that the Legislature could not create a district court, and locate it at any point other than the county seat, because the Constitution had so proclaimed.

If it were necessary, or the time ample, to cull from the reports of the Supreme Court of this State, as well as from the reports of the Court of Appeals, and the Court of Criminal Appeals, a great many decisions could be found wherein the acts of the Legislature have been set aside because of their unconstitutionality. Several of the acts of the recent Legislature have been held unconstitutional since its adjournment last June; and it has been but recently that the Supreme Court held that the act of a city council in levying an assessment tax or sum of money, and creating a lien on the homestead for the payment thereof, for the improvement of streets in front of said homestead, was violative of the Constitution of Texas. See Higgins v. Bordages, 88 Texas, 458. And see also Light Co. v. Keenan, 88 Texas, 197, where another act of the Legislature was held unconstitutional. So, if this court, in the Leach case, expressed any apprehension of the fact that the Legislature might abuse its power in passing unconstitutional acts, that fear, to say the least of it, is fully justified by the decisions of all the courts of last resort in this State. And more than that, by the same decisions, it can be maintained that that fear had matured into an actual realization prior to the Leach decision. And if it be correct, as was said in Harris County v. Stewart, that "the Legislature may destroy the judicial system of this State," then it would be useless to urge the proposition that the appellate jurisdiction of this court could cure those evils. It is also asserted in Harris County v. Stewart that, if the Leach Case is correct, "it would seriously affect the administration of the civil laws of this State, of which this court has final jurisdiction.". We do not so understand the law. How this could affect the jurisdiction of the Supreme Court is not stated in that opinion. If the Legislature has conferred, or can confer civil jurisdiction upon these city courts of matters outside and beyond their own municipal affairs, whether exclusive of or concurrent with State courts, then it is certain that such jurisdiction could be exercised by the State courts, if not conferred upon the corporation courts; and, if the Supreme Court could obtain jurisdiction of it from the city courts by reason of its lodgment in the corporation court, it certainly would not be deprived of such jurisdiction, if the same jurisdiction is lodged in the State court. So far as the Supreme Court's jurisdiction is concerned, we do not understand how the Leach Case has any effect; for certainly that court would not hold that because these civil matters were tried in the State court, and not in the corporation court, it would therefore be deprived of its appellate jurisdiction. We are not deciding the Supreme Court's appellate jurisdiction over the trial courts, but have been under the impression that such jurisdiction was limited to writs of error from the Courts of Civil Appeals. So, in view of the whole matter, we have seen

no reason to change our views as expressed in Leach v. State, Ex Parte Knox, and Ex Parte Fagg, supra; and, upon further examination of the questions involved in those cases, we are still of the same opinion. We are also of opinion that corporation courts can not be invested with jurisdiction exclusive of or concurrent with State courts to try violations of our penal laws; nor can the Legislature invest municipal corporations with the power to suspend any penal law of the State within the limits of such corporation; and, further, that corporation courts are only authorized in this State as incidental to municipal charters, and can only be brought into existence under such charters; that such courts are not, and can not be, created under article 5 of our State Constitution; and that they can not form a part of "the judicial power of the State," provided for by said article, but are incidental only to corporate charters, under article 11 of said Constitution.

The remaining questions, we think, are without merit, and are not therefore discussed. The judgment is affirmed.

HENDERSON, JUDGE.—I agree to the result reached; that is, that the city court of Dallas did not have jurisdiction to try said case. I will file my views on the questions discussed.

*Affirmed.*

, HURT, Presiding Judge, dissents.

HENDERSON, JUDGE.—Appellant was tried in the County Court of Dallas County, and convicted of keeping a disorderly house. On the trial she interposed a plea to the jurisdiction of the County Court, based on the ground that the charter of the city of Dallas vested in the city court exclusive jurisdiction of said offense. An inspection of the charter of the city of Dallas existing at that time and now shows that her contention to the effect that the city court was given exclusive jurisdiction of said offense was correct; accordingly the constitutional question as to whether the Legislature had the power to confer jurisdiction of State cases upon the municipal court of Dallas is here presented. Under ordinary circumstances I should not feel called upon to express my views, inasmuch as I concur in the result reached in the opinion of my Brother Davidson. The question, however, is of such importance that I believe it my duty to supplement that opinion with at least some of the reasons which induce me to hold said charter unconstitutional so far as it seeks to give jurisdiction of State cases to the municipal court of Dallas. I am not unmindful of the gravity of the situation when a court is required to pass upon the constitutionality of an act of the Legislature, but the question is fraught with still greater embarrassment in this instance, because I feel constrained to differ not only with the presiding judge of this court, but with the able and exhaustive opinion of the Supreme Court of this State on this question. But entertaining, as I do, the belief that "it is the duty of the courts to uphold the Constitution as it is written, and to yield no part of their right or authority, and that judges are

chosen for the purpose of maintaining the limitations of the Constitution, without which free government can not exist," I should be recreant to the trust imposed in me by the people of the State if I did not, within the functions of my office, resist to the utmost any interference, even on the part of the Legislature, with the principles of the Constitution. Not even so high a tribunal should be permitted to violate its provisions with impunity. At the same time, "nothing but a clear violation of the Constitution, a clear usurpation of power prohibited, will justify the judicial department in pronouncing an act of the legislative department null and void." Actuated by such a sentiment, I have given the question that examination which so grave a subject demands, and I believe I shall be able, before I conclude, "to put my finger" upon the provision of the Constitution which the Legislature in passing the act in question, violated, or from which the prohibition necessarily arises.

1. I submit that corporation courts are mere incidents of municipal government, for the enforcement of municipal laws. This was their character at common law. See 1 Dill. Mun. Corp., secs. 424-426. In America our States have generally followed the above in construing the status and functions of municipal courts. It is conceded that in some of the States this is not the rule, but, as a general proposition, I think it may be safely stated that municipal courts are merely incidents of municipal corporations. They can not exist unless there is first in existence a town or city, which must be incorporated. Their jurisdiction and functions are coextensive with the town or city, and pertain to offenses against the municipal government which are made such by ordinances which may be passed for that purpose. As stated by Mr. Dillon (volume 1, sec. 428): "It is clear that it is competent for the Legislature of a State to create municipal courts with powers of local government, and to authorize them to adopt ordinances or by-laws, with appropriate penalties for their violation. The power to do this includes, by fair implication, the power to authorize violations of ordinances (where the acts are not criminal in their nature) to be tried and determined in a summary manner by a local or corporation tribunal." It may be conceded, however, that the Legislature may authorize municipal courts to exercise jurisdiction in State cases, unless some provision of the Constitution should be infringed. As stated above, in some of the States municipal courts are regarded as a part of the State judiciary, but these are the exceptions which serve only to prove the rule; and it is believed an examination of the cases will show that the Constitutions of such States are different from ours, and give warrant to the Legislature to treat these courts as a part of the judicial system of the State; or the history of such courts, in connection with the Constitution, is such as to authorize the conferring of such jurisdiction upon them. The cases which bear out this contention are cited in Harris County v. Stewart, 91 Texas, 133. A number of States hold a different view. See La Fon v. Dufrocq, La. Ann., 350; State v. Maynard, 14 Ill., 419; Shafer v. Mumma, 17 Md., 331; Holmberg v. Hauck, 16 Neb., 337;

Brown v. State, 79 Ga., 324. In our own State it has been held that it, was entirely competent for the Legislature to create courts for the pur-- pose of enforcing municipal ordinances. See Blessing v. State, 42 Texas, 641. And it has also been held that jurisdiction pertaining to State courts could not be conferred on municipal courts. These are decisions under a former Constitution, and hold that recorders and mayors could not be justices of the peace. See Bigby v. City of Tyler, 44 Texas, 351; Holmes v. State, Id., 631. It is true, our courts have recognized the exercise of jurisdiction by municipal courts of State cases, and a number of cases are cited to that effect in Ex Parte Fagg,. ante, p. 573. The constitutional question, however, was not made in those cases, and they can not be considered as authority upon this question. Jurisdiction in our State was originally ingrafted upon munici- pal courts of petty offenses against State laws under Constitutions which made corporation courts a part of the judicial system of the State. See Const. 1845, art. 4, sec. 1; Const. 1861, art. 4, sec. 1; Const. 1866, art. 4, sec. 1. Under said Constitutions, in 1856, at the time of the adop- tion of our first Penal Code and Code of Criminal Procedure, the Legis- lature passed certain articles, to wit, articles 98, 929, 930, Code of Crim- inal Procedure, which gave to mayors and recorders the same jurisdic- tion to try State cases as justices of the peace. More recently, however,. larger jurisdiction than of mere petty offenses has been from time to time vested in municipal courts by special charters to cities. The constitu- tionality of these acts has for some time passed unchallenged. Nor was public attention called to the fact that the Constitutions under which these courts were authorized to exercise jurisdiction as State courts were no longer in existence. No doubt, much of the confusion which has arisen on this subject was occasioned by the fact that said articles of the Code of Criminal Procedure passed in 1856, when the Legislature had the right to enact them, were brought forward from time to time by the codifiers, and so continued in force. It is submitted, however, if these articles of the Code were unconstitutional when brought forward, they did not get to be constitutional by simply being re-enacted and adopted as general laws, and jurisdiction exercised thereunder. If the clause of the Constitution which authorizes the conferring of jurisdiction upon mayors' and recorders' courts of State cases was repealed by being omitted from the new organic law, which was passed in 1869, then said courts ceased to be a part of our State judicial system, and no authority remained with the Legislature to clothe them with jurisdiction apper- taining to State courts.

2. In order to present this question clearly, I submit that corpora- tion courts are not now named as a part of the judicial system of the State, and, if they are to be regarded as such, this claim must rest on one of two propositions: (1) They either constitute a part of the judi- cial system of the State, despite the fact that they are not named in the Constitution, or (2) they become such by virtue of the creative power of the Legislature under the Constitution. Discussing these propositions in

their order, I insist that corporation courts constitute no part of our judicial system. The fact that our Constitution once named these corporation courts as a part of our system, and afterwards, in the formation of new Constitutions, the other courts formerly named were retained in the judiciary article, but corporation courts were dropped therefrom, to my mind is strong, if not conclusive, evidence of an intention to eliminate such courts from our judicial system. I do not deny that in one sense municipal courts are a part of the judicial system of the State, inasmuch as they enforce certain local State laws, but I do deny that they are State courts in the sense that they are a part of the State judiciary, as contemplated by the Constitution; and I emphatically deny that the inherent right exists in the Legislature under the Constitution to confer jurisdiction of State cases upon municipal courts. While such courts, in a qualified sense, are a part of the judicial power of the State, they are merely incidents of municipal corporations, and they can only exercise such power as properly belongs to municipal government; that is, to enforce such ordinances as a city or town has a right to pass. And I maintain that a city or town has no right to pass an ordinance making that an offense against the city which has been declared a crime against the State. The State, by its laws, having already occupied the territory, the Legislature can not delegate authority to municipal governments to encroach upon, much less indirectly annul, State laws. It is conceded that all judicial power is derived from the State, and unless the power of the Legislature is limited by the Constitution, either express or implied, then the Legislature is omnipotent in itself, either to create courts or confer jurisdiction upon existing courts. Now, our Constitution vests the judicial power of the State in the Supreme Court, Court of Criminal Appeals, Courts of Civil Appeals, district, county, and commissioners courts, and justices of the peace courts. It is not necessary to go into the details of our judiciary article, but a reference thereto will show that the object of the Constitution builders was to mark out a complete judicial system. The entire State, including every county, is required to be divided into judicial districts. Each county is required to have a county court, and the counties are required to be divided into commissioners precincts, and thus commissioners courts constituted. So, with justices' courts, each county is required to have not less than four and not more than eight justices of the peace, unless a county shall contain a city of 8000 or more inhabitants, in which case such city is authorized to have two justices of the peace. The organization of these courts is set out in the judiciary article. The officers authorized to hold them are named, and their functions and duties prescribed. Not only so, but control is given to the district court over all the subordinate courts, and they are authorized to remove the officers of such courts on sufficient cause. The article goes still further, and provides how vacancies in such courts are to be filled. It is not a case where the Constitution is silent on the subject, for that instrument speaks; and the maxim, "Expressio unius est exclusio alterius," becomes

the rule.  As was said in a New Jersey case (see ¹Harris v. Vanderveer, 21 N. J. Eq., 424): "In an examination of these sections, the first thing that attracts attention is this:  that the instrument itself establishes certain courts.  It does not leave that all-important work to other hands. An omission in this respect in the Constitution would have left the judicial system without any fixity whatever.  In such a state of things, the powers, jurisdiction, and even the very existence, of the civil courts would have been placed under the control of the Legislature.  They could have been altered or abolished by that body at will."  If the Constitution stopped here, I apprehend that no one would be bold enough to declare that any State jurisdiction could be vested in municipal courts.  The Constitution of 1891, however, goes a step further, and authorizes the Legislature to create "other courts."  This same power was contained in the Constitution of 1876, and was construed by Judge Roberts in Ex Parte Towles, 48 Texas, 413.  See also Gibson v. Templeton, 62 Texas, 555; Ex Parte Whitlow, 59 Texas, 273; Williamson v. Lane, 52 Texas, 335; Whitener v. Belknap, 89 Texas, 273.  I quote from Judge Roberts in the Towles Case as follows: "It was certainly the object of the framers of our Constitution to mark out a complete judicial system by defining generally the province of each of the courts by reference to the objects confided to the action of each, and the relation of each to the others. To that extent it must be held to be permanent, and not subject to change by the action of the Legislature, except as a change may have been provided for.  This is plainly, though incidentally, indicated by a special provision for a change in the jurisdiction of the county court." Now, if the creative power of the Legislature under the Constitutions of 1876 and 1891 is the same in this respect, then I maintain that the construction must be the same.  That the creative power is the same I think no one will deny.  If Judge Roberts' opinion was sound when written, it is equally sound now, when applied to the Constitution of 1891.  And I insist, in this connection, if corporation courts existed throughout the State at the time of the adoption of our Constitution (and this no one will deny), and they were regarded as a part of the judicial system of the State, why were they not named in that instrument?  Evidently these courts were not regarded as a part of the judicial system.  Other courts were named in the Constitution.  These were not; and if they are to be regarded as a part of our judicial system, they are so by a higher law than the Constitution itself.  Nor must it be forgotten that our judiciary article is flexible, fully adequate to meet all the demands of the present and the immediate future.  The amendment of 1891 makes the district court more elastic, and enlarges its jurisdiction, and as many district courts can be created as the necessities of litigation may require.  True, there can be but one county court, but the jurisdiction of this court is cast in such shape as that there can never be any danger of overcrowding it.  And when we come to the justices' courts, which have jurisdiction of petty offenses, such as it is claimed mayors and recorders ought to have jurisdiction to try, we find that

the Constitution authorizes an increase of the justices of the peace where such cities have over 8000 inhabitants; thus negativing the idea that it was intended that municipal courts should constitute a part of the judicial power of the State for the trial of even petty offenses.  It will not be contended that the Legislature, in the face of the Constitution limiting the number of justices of the peace in a county, could directly create a greater number of justices than is provided by the Constitution.  If the Legislature could not create a greater number of such justices in any county directly, it is a self-evident proposition that they could not do so indirectly.  Therefore they could not indirectly constitute mayors and recorders of cities justices of the peace, for this would be doing by indirection what the Constitution prohibits directly.  See Holmes v. State, 44 Texas, 631, where this question was directly decided; and also Bigby v. City of Tyler, 44 Texas, 351: "When the Constitution, as the source of judicial power, vests that power in designated tribunals, the Legislature can neither vest it elsewhere, nor create new judicial offices, nor divide the duties of the judicial office designated by the Constitution.  The Constitution can not be evaded by a change in the name of an office, nor can an office be divided, and the duties assigned to two or more offices under different names, and the appointment to the offices made in any manner except as authorized by the Constitution."  See People v. Albertson, 55 N. Y., 57.  The same observations hold good with reference to our county court system, for the Constitution (article 5, section 15) limits the authority of the Legislature to the creation of only one county court in each county.  The Legislature therefore can not, directly or indirectly, create more than one county court by conferring jurisdiction upon inferior courts, for the Constitution has limited the jurisdiction of justices of the peace in criminal matters to cases where the fine imposed does not exceed $200.  It has also placed a limitation upon the jurisdiction of said courts in civil matters.  Therefore the justice's court jurisdiction can not be increased in the face of the Constitution, so as to include those offenses where the fine is in excess of $200 as a punishment.  It is true that the Constitution has provided that the jurisdiction of county courts may be changed, increased, or diminished, either by local or general law; but this jurisdiction can not be conferred, as before stated, upon justices of the peace, because the Constitution has limited the jurisdiction of justices' courts.  Therefore there is but one court mentioned in the Constitution upon which the Legislature may confer jurisdiction taken from the county court, and that is the district court.  The district court, by sections 7 and 8 of article 5 of the Constitution, is the only court specifically mentioned in the Constitution which could exercise any jurisdiction that might be taken from the county court by local or general laws passed by the Legislature for that purpose.  It will therefore be seen, if the language of the Constitution means what it says, or says what it means, that there may be as many district

courts in the State of Texas as the Legislature may see proper to create or bring into existence. Then the conclusion is irresistible that under our Constitution, if the Legislature creates other courts, they can only exercise such jurisdiction as might be exercised by the district court as an original court, or such court with the jurisdiction of the county court conferred upon it by the local or general law passed by the Legislature for that purpose. And it follows, as a corollary to this, if the Legislature can not create an additional county court to that provided by the Constitution, then it can not create a mayor's or recorder's court with co-ordinate jurisdiction with that court; nor can it create mayors' or recorders' courts, directly or indirectly, justices of the peace courts, and confer upon them jurisdiction appertaining to such courts, because, as before stated, the Constitution has set the bounds to their jurisdiction and authority. Then it follows as a logical conclusion, if the Legislature can create of a municipal court a State court, it must be with the jurisdiction pertaining to a district court. So it occurs to me that we reach the inevitable conclusion that our judiciary article prohibits the conferring of jurisdiction upon mayors' or recorders' courts which would make them co-ordinate with county courts or justices of the peace courts. And I believe that the declaration of Judge Roberts in the Towles Case, supra, is equally as applicable in the construction of our judiciary article of 1891 as it was in the construction of our judiciary article of 1876. The people intended to preserve our judicial system intact. The terms used, in my opinion, can bear no other construction. The district court is the basic principle upon which the entire system is founded; and the whole may be likened to some noble oak, towering with Olympian majesty and imperial supremacy above the lesser trees of the forest. The bole or trunk, vigorous and strong, springing—a graceful colonnade—from the ground, to bathe its leafy foliage in the clouds, fitly represents the district courts. This, supported and nourished by the county courts and commissioners' and justices' courts, may be aptly termed the roots of the system, which strike down deep into the rich alluvial soil of our jurisprudence. The Courts of Civil Appeals stretch their giant limbs above and around, and with their superb setting reach out to catch the winds and dews and sunshine, to give them back again, and to shadow, fertilize, and fructify the soil beneath. While high over all, standing like armed sentinels to guard the sacred domain, crowning the summit, are the Supreme Court and the Court of Criminal · Appeals. Others can be created, but they must be of like kind, and grafted into the system by skillful hands. Thus completed, unique in outline, perfect in symmetry, and vigorous in its strength and growth, this magnificent temple of justice, builded by the framers of our Constitution, is well fitted ·to meet and grapple with all the demands of litigation, and to withstand the sinister touch of the fawning sycophant, or the ruder assaults of brute force and unchained power, no matter by whom set in motion.

This brings me to the second proposition or subdivision of the subject, to wit: Did the Dallas city court become a State court by virtue of the creative power of the Legislature under the Constitution? I am not prepared to say that municipal courts can not be habilitated, and brought into our judicial system, and made to do double service, both as municipal and State courts, as was done in Helfreid's Case, 2 Nott & McC., 233. But when this is attempted it must be done by creative act, and not by merely conferring jurisdiction as upon State courts. By an examination of the various acts of the Legislature creating State courts and municipal courts, the difference will be apparent; and it will become evident that the Legislature never intended to make any municipal court in the State of Texas a State court. On the contrary, the attempt has always been simply to confer jurisdiction of State cases upon these courts. By way of example, take the Dallas County Criminal District Court and the City Court of Dallas. In the first it is evident that the Legislature went about the performance of its duty under the Constitution to create a State court. They exercised a care. It is a general act, and under a proper caption. The jurisdiction of said court is carefully provided for, and made to conform to the other district courts in that county. A seal is prescribed for said court. A judge, and his selection, together with all the officers thereof, are provided for; the terms of said court are fixed; and we know, without question, that here the Legislature intended to create a State court. Now, turn to the act creating the City Court of Dallas. In the first place, it is a special act of the Legislature. (It does not occur to me that the Legislature could undertake to perform this duty under a special act.) The caption of said act is, "An act to incorporate the city of Dallas, and grant it a charter." This itself would, under a provision of our Constitution, render the attempt to create a State court null and void. See Ex Parte Fagg, ante, p. 573, and authorities there cited. The city judge gets his official status not from the State, but from the city, and his compensation is entirely from the city. The very seal of the court is provided for by the city. The process does not run in the name of the State, but in that of the city. Throughout the act it is referred to as a city court, having jurisdiction of city cases by ordinances. Section 27, in providing for process, says that it shall be served and executed in the same manner as process issued from a State court, and the practice and procedure of the State courts shall govern, etc. Now, if it was State court, why not refer to it as such, instead of referring to it as a city court, and authorizing its procedure to be conducted in some cases as the practice and procedure in State courts, as far as applicable and practicable? It is· not necessary to go further into details; but to my mind it is evident that the Legislature did not intend to create a State court of this, but a city court, and merely attempted to confer jurisdiction upon it to try certain State cases. If it was an already existing State court, it would have been perfectly competent for the Legislature to have done this; that is, to

confer jurisdiction upon it. If it was not a State court, before they could confer jurisdiction upon it it was obligatory upon the Legislature to create and make of it a State court. I think it is clear, viewing this matter from any standpoint, that the City Court of Dallas did not have jurisdiction to try said offense of keeping a disorderly house, neither as an existing State court under our Constitution, nor as a State court created by the Legislature under that instrument. It may be said that the holding of these acts of the Legislature attempting to bestow jurisdiction of State cases upon municipal courts unconstitutional will be productive of great confusion; but, if this be conceded, it would not justify us in holding that an act deemed unconstitutional should be held valid. The argument ab inconvenienti has no place here. I do not, however, agree to the proposition that municipal courts are better fitted to try this character of cases, or any State case, than State courts, and I do not believe that the history of municipal government in this State will show this. It occurs to me that one difficulty in dealing with such offenses has been that the Legislature has atempted to confer a dual jurisdiction, thus creating a divided responsibility, which appears to have been shirked more or less by both tribunals. As a result, there has been confusion, and a failure to properly administer the law. I believe the State courts were created for the purpose of trying State cases, and that, when the responsibility is placed alone on them to deal with bawdy houses and gambling saloons in towns and cities, a great forward step will have been made in the administration of law and in the suppression of these vices. As a result, there will no longer be regulation, but suppression; and if the State courts fail to meet the responsibility thus cast upon them, the people will know whom to hold responsible for failure to discharge duty. At any rate, as long as the State laws remain as they are upon the statute books, State offenses must be enforced by State courts; and if it is deemed against public policy that jurisdiction over certain offenses should remain with the State courts, but that the same should be vested in municipal courts, let the Constitution be changed, or let the Legislature repeal the State laws on certain subjects altogether, and then the cities will have authority, by ordinances, to deal with these offenses.